**In re Randy L. DALE and Susan P. Dale, Debtors.**

**Bankruptcy No. HL 99–08963.**

United States Bankruptcy Court, W.D. Michigan.

Aug. 25, 2000.

Raynor D. Zillgitt, Jr., East Lansing, MI, for Debtors.

Scott M. Chernich, Foster, Swift, Collins & Smith, PC, Lansing, MI, for Chapter 7 Trustee.

Michael W. Puerner, Foster, Swift, Collins & Smith, PC, Lansing, MI, Chapter 7 Trustee.

## *OPINION*

JEFFREY R. HUGHES, Bankruptcy Judge.

Debtors own five individual retirement accounts ("IRAs") which have a total value of approximately $33,600.00. Debtors elected the federal exemption scheme permitted by 11 U.S.C. § 522(b) of the Bankruptcy Code[1] and exempted the entire value of these IRAs pursuant to Section 522(d)(10)(E). In support of their position, Debtors rely upon Bankruptcy Judge Gregg's decision in *In re Hall,* 151 B.R. 412 (Bankr.W.D.Mich.1993) and District Judges Quist's and McKeague's decisions in *Brucher v. Dettman (In re Brucher),* No. 2:99–CV–184 (W.D.Mich. Nov. 22, 1999) (unpublished) and *Jurgensen v. Chalmers (In re Jurgensen),* 248 B.R. 94 (W.D.Mich.2000).

---

**1.** All references in this opinion to the United States Bankruptcy Code, 11 U.S.C. § 101, *et* *seq.,* will be either as "Section _____," or as "11 U.S.C. § _____."

The Chapter 7 Trustee objected to Debtors' exemption of the IRAs. It is his position that IRAs are not eligible for exemption under Section 522(d)(10)(E).[2] As support, the Chapter 7 Trustee relies upon Bankruptcy Judge Stevenson's decision in *In re Moss*, 143 B.R. 465 (Bankr. W.D.Mich.1992).

I conclude that Section 522(d)(10)(E) is available as an exemption only to the extent that the debtor is eligible at the time of the bankruptcy petition to draw benefits from the IRAs on account of one of the factors enumerated in Section 522(d)(10)(E) (i.e., illness, disability, death, age or length of service) and then only to the extent that those benefits are reasonably necessary to support the debtor and the debtor's dependents. Therefore, Debtors' claimed exemption in their IRAs will be denied except to the extent they are currently eligible for benefits under their IRAs for one or more of the reasons set forth in Section 522(d)(10)(E). If the Debtors are eligible, then the amount of the IRAs which they may exempt will be equal to the present value of the benefits they will reasonably require to support themselves and their dependents.

### JURISDICTION

This matter is a "core proceeding" and therefore this Court has jurisdiction to enter a final order subject to appellate review by the district court. 28 U.S.C. § 1334(a), W.D. Mich. L. Civ. R. 83.2, 28

**2.** The Chapter 7 Trustee has also objected to the exemption of all or a portion of these IRAs on the alternative theory that the IRAs are not reasonably necessary for the support of the Debtors and their dependents.

**3.** I acknowledge that my decision adds yet another compass point from which future courts may select as they confront this issue. I also recognize that my decision runs counter to the decisions of three of the four judges in this district who have addressed this issue and that two of those three judges have appellate authority over my decisions. I value consistency within the district. However, as I read and reread the *Hall, Jurgensen, Brucher* and *Moss* decisions, I could not escape the

U.S.C. § 157(b)(2)(A) and (O). There are no contested facts. The opinion sets forth my conclusions of law. Fed. R. Bankr.P. 7052.

### OPINION

Will Rogers once observed that if one were to line up all economists in a row, they would point in all directions. Perhaps the same can be said of the cases concerning the exemption of retirement benefits under Section 522(d)(10)(E). That there is such a divergence of opinion is not the fault of the numerous judges who have had to address this problem. Rather, the divergence exists because of the seemingly irreconcilable language which Congress chose when it created this exemption and because of the lack of any significant legislative history to explain Congress' purpose. As Judge McKeague observed in *In re Jurgensen*, the language of Section 522(d)(10) compels the interpreter of that section to navigate between the "Scylla of rigid construction" and the "Charybdis of meaninglessness." 248 B.R. at 98–99.[3]

I believe that much of the confusion surrounding the interpretation of Section 522(d)(10)(E) stems from how the courts and the litigants have framed the issue. Typically, the question is presented as being whether debtor's interest in the pension or similar plan is exempt. *See, e.g., Cilek,* 115 B.R. 974, 977 (Bankr.

conclusion that each court struggled as it attempted to decipher Section 522(d)(10)(E). Moreover, I could not find anything within these decisions or the multitude of other decisions concerning Section 522(d)(10)(E) which analyzed this subsection in the context of the four other subsections of Section 522(d)(10).

The appellate courts may not accord the same significance to these other subsections as I have. If not, then my decision will be overturned and I will follow their direction. However, I could not in good conscience ignore what I believe is a very compelling argument, particularly when it appears that that argument has not been considered by any previous court which has addressed this issue.

W.D.Wis.1990) ("The issues presented by this matter are ... [w]hether the Debtor's IRAs are exempt under 11 U.S.C. § 522(d)(10)(E) . . ."); *In re Zott*, 225 B.R. 160, 172 (Bankr.E.D.Mich.1998) ("In summary, this Court finds that the Debtors' IRAs are property of the estate under § 541 and not exempt under § 522(d)(10)(E)"); *In re Hermes*, 239 B.R. 491, 497 (E.D.Mich.1999) ("Accordingly, for all of the foregoing reasons, this Court concludes that the IRA is exempt under § 522(d)(10)(E)").

However, nothing within Section 522(d)(10)(E) indicates that it is the Debtors' interest in the pension or similar plan which is subject to exemption. Rather, Section 522(d)(10)(E) specifically limits the exemption to "[t]he debtors' right to receive a payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract ..." (emphasis added). Given that Congress used the word "interest" in describing seven of the ten other categories of property rights which may be exempted under the federal exemption scheme set forth in Section 522(d),[4] it is reasonable to assume that Congress did not intend that a debtor's right to receive a payment under a pension plan be synonymous with the debtor's overall interest in that plan. Indeed, the Fifth Circuit made this very observation:

> To qualify for the exemption under § 522(d)(10)(E), the interest in question must be "the debtor's right to receive a

payment under a stock bonus, pension, profitsharing, annuity or similar plan or contract." Thus, it is not the plan or contract that either is or is not exempt, but the *right* to *receive* a *payment* from a plan or contract if qualified under § 522(d)(10)(E) that will enjoy exemption.

*In re Carmichael*, 100 F.3d 375, 377 (5th Cir.1996) (emphasis in original).[5]

What I believe has prompted most courts to equate the "right to receive a payment" under a plan with the debtor's overall interest in that plan is the underlying assumption that Congress intended to generally exempt retirement plans when it enacted Section 522(d)(10)(E). For example, in *Carmichael*, the court explained that IRAs should be exempted like other retirement plans in order to further Congressional policy:

> [E]xempting IRAs comports with the very policy furthered by exemptions— providing the honest debtor with a fresh start. More specifically, exempting IRAs furthers the policy behind the pension exemption—protecting a debtor's future income stream.

*Id.* at 378.

However, I cannot find anything within the Bankruptcy Code or the legislative history which manifests a Congressional intent to exempt retirement plans in toto. Certainly, there is nothing within Section 522(d)(10)(E) itself which would inescapa-

---

4. 11 U.S.C. § 522(d)(1)-(6) and (8).

5. However, the *Carmichael* court ultimately ignored this distinction. What it concluded was that the debtor's interest in his IRA was exempt because he held a vested right to receive future payments on account of his age. *Id.* at 379–80. In other words, the court concluded that if a debtor has a vested interest to receive payments from his IRA sometime in the future on account of his age, then the entire IRA is exempt regardless of whether the debtor might also have other rights to receive payments from that IRA which are completely unrelated to his age or any of the other conditions enumerated in Section 522(d)(10)(E). If the *Carmichael*

court had been true to the right to payment/interest dichotomy which it professed to be making, it could not have so deftly concluded that the entire IRA was exempt. Rather, it would have had to address the more difficult analytical problem of reconciling the fact that while a debtor's vested right to receive future retirement payments under the IRA may be exempt, the debtor's immediate right to receive a payment under the very same IRA would not be exempt. As discussed later in this opinion, such a dilemma does not arise if the right to payment to be exempted under Section 522(d)(10)(E) is limited to the debtor's immediate right to receive payments at the time of her bankruptcy petition.

bly lead one to this conclusion. *See, e.g., In re Clark,* 711 F.2d 21, 23 (3rd Cir.1983).

Many courts have criticized *Clark.* For example, the court in *In re Cilek* said:

> Unlike the Court of Appeals in *Clark,* this Court finds ample concern for the Debtor's long term security in the statute, the legislative history and the decisions of other courts. Both the subject of the statute (i.e., stock bonuses, pensions, profit-sharing plans and annuities) and the purpose of the statute (i.e., exemptions for the basic necessities) look to the future. Even the legislative history speaks of the future when it states: "Paragraph (10) exempts certain benefits that are akin to future earnings of the debtor."

*In re Cilek,* 115 B.R. at 978 (internal citations omitted).

I am not persuaded. If Congress had in fact intended a "pension exemption," as the court in *Carmichael* put it,[6] it could have done so clearly and unambiguously by stating that all interests in a "stock bonus, pension, profit-sharing, annuity or similar plan or contract" are exempt.[7]

---

6. *Carmichael,* 100 F.3d at 378.

7. As a comparison, the Michigan legislature chose the following language to exclude IRAs from execution or judgments:

> The following property of the debtor and the debtor's dependents shall be exempt from levy and sale under any execution:
>
> \*   \*   \*   \*   \*   \*
>
> (k) An individual retirement account or individual retirement annuity as defined in section 408 or 408a of the internal revenue code of 1986 and the payments or distributions from such an account or annuity. This exemption applies to the operation of the federal bankruptcy code as permitted by section 522(b)(2) of title 11 of the United States Code, 11 U.S.C. 522. This exemption does not apply to any amounts contributed to an individual retirement account or individual retirement annuity if the contribution occurs within 120 days before the debtor files for bankruptcy. This exemption does not apply to an individual retirement account or individual retirement annuity to the extent that any of the following occur:

Also telling is the absence of any other statutory evidence within the Bankruptcy Code of a Congressional intent to protect retirement plans per se. Granted, many retirement plans are excluded altogether from the bankruptcy estate. However, these plans are not excluded because of any express Congressional purpose, but because such plans are required to include restrictions on transfers which place them within the generic exclusion afforded to spendthrift trusts. 11 U.S.C. § 541(c)(2). The circuits disagreed as to whether a Section 541(c)(2) even applied to ERISA-qualified plans until the Supreme Court rendered its opinion in *Patterson v. Shumate,* 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Indeed, a new debate continues to this day as to whether the plan must also comply with the Internal Revenue Code in order to be excluded. *Compare In re Hall,* 151 B.R. 412 (Bankr. W.D.Mich.1993) *with In re Hanes,* 162 B.R. 733 (Bankr.E.D.Va.1994).

■ However, what convinces me most that Section 522(d)(10)(E) was not intended to exempt the debtor's entire interest in a pension or other similar plan is

> (*i*) The individual retirement account or individual retirement annuity is subject to an order of a court pursuant to a judgment of divorce or separate maintenance.
>
> (*ii*) The individual retirement account or individual retirement annuity is subject to an order of a court concerning child support.
>
> (*iii*) Contributions to the individual retirement account or premiums on the individual retirement annuity, including the earnings or benefits from those contributions or premiums, exceed, in the tax year made or paid, the deductible amount allowed under section 408 of the internal revenue code of 1986. This limitation on contributions does not apply to a rollover of a pension, profitsharing, stock bonus or other plan that is qualified under section 401 of the internal revenue code of 1986, or an annuity contract under section 403(b) of the internal revenue code of 1986.
>
> \*   \*   \*   \*   \*   \*

M.C.L.A. 600.6023(1)(k).

that Congress did not include this exemption as a separate and distinct subsection within the federal exemption scheme set forth in Section 522(d). Instead, Congress limited the exemption to a "right to receive a payment" under a retirement or similar plan and then grouped that exemption with four other categories of benefits. 11 U.S.C. § 522(d)(10)(A)-(D). A fundamental rule of statutory construction is that the language being interpreted must be evaluated in context, not in isolation. "The plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences." *Walton v. Hammons*, 192 F.3d 590, 595 (6th Cir.1999) (quoting *Beecham v. United States*, 511 U.S. 368, 372, 114 S.Ct. 1669, 128 L.Ed.2d 383 (1994)). Therefore, it is quite appropriate to examine these other subsections to ascertain what Congress intended when it enacted Section 522(d)(10)(E).

These first four subsections share a common theme: each enumerated benefit or right to payment is based upon a condition of the recipient typically associated with immediate need. For example, the elderly and disabled frequently rely upon social security and veterans benefits as their sole means of support. The unemployed depend upon unemployment compensation and the poor depend upon public assistance. A divorced spouse and his or her dependents require alimony or other support for their basic needs, especially if they have no other resources.

What I discern from these other four subsections is a Congressional design to ensure that unemployed or underemployed debtors who depend upon benefits and other payments for their livelihood are offered the same opportunity for a "fresh start" as debtors who are fully employed.

Congress, when it enacted the Bankruptcy Code, excluded from the estate's property, all "earnings from service performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). The exclusion of an individual debtor's post-petition earnings is consistent with Congress' overall scheme of providing a debtor with a "fresh start." The exclusion makes quite clear that the debtor's post-petition earnings may not be attached by a bankruptcy trustee for the benefit of the debtor's creditors, but instead may be preserved for the sustenance of the debtor and his family.[8]

However, the Section 541(a)(6) exclusion of post-petition earnings does not address a separate body of debtors who are equally entitled to a "fresh start"—debtors who sustain themselves from sources other than earnings. Included among such non-wage earning debtors are persons receiving social security, unemployment, and public assistance benefits. These benefits are not future wages but instead are quasi-assets. For example, a retired debtor receiving social security benefits at the time of her bankruptcy petition does not continue to "earn" those benefits post-petition. Her age has already established her eligibility. Similarly, a divorced spouse who is receiving alimony does not "earn" the post-petition support payments. Indeed, post-petition alimony payments arising under a pre-petition divorce judgment are more akin to payments on account of a pre-petition account receivable than to future earnings.

■ I believe that Congress intended Section 522(d)(10) to ensure that deserving debtors who are receiving non-wage benefits at the time they file for bankruptcy would receive the same treatment as debt-

---

8. Notwithstanding Section 541(a)(6), a debtor's future earnings are part of the bankruptcy estate in a Chapter 12 or Chapter 13 proceeding. 11 U.S.C. §§ 1207(2), 1306(a)(2). However, the commitment of those future earnings is in turn circumscribed by the requirement that only a debtor's "disposable income" (i.e., net income in excess of what is necessary for the support of the debtor and debtor's dependents) need actually be committed to funding the Chapter 12 or Chapter 13 plan. 11 U.S.C. §§ 1225(b), 1325(b). Therefore, the Congressional purpose of ensuring a "fresh start" to the working debtor is preserved even in the context of the Chapter 12 or Chapter 13 proceeding.

ors who are employed. What Congress recognized was that there would be debtors filing for bankruptcy relief who depended upon non-wage payment streams for their livelihood and that many of these debtors needed these benefits as much, if not more, than debtors who could continue to work. It is in this sense that the "benefits" enumerated in Section 522(d)(10) are "akin to future earnings of the debtor." [9]

However, Congress did not exclude any and all non-wage payment streams to which the debtor might be entitled at the time of filing as it did for any and all earnings. 11 U.S.C. § 541(a)(6). Congress instead limited the exemption of these payment streams to situations where the recipient's circumstances were such that the benefits were needed for his support and the support of his dependents. In some instances, Congress simply assumed that the benefit would be necessary without further examination. For example, persons receiving public assistance presumably receive those benefits because they cannot earn enough money to otherwise support themselves or their dependents. Similarly, persons receiving social security or veterans benefits are mostly old or disabled and therefore not able to support themselves.

On the other hand, Congress was unwilling to make this assumption with respect to payments received on account of alimony or other marital maintenance obligations. Such payments are often the primary if not the only means for the bankrupt debtor to accomplish a post-petition "fresh start." However, alimony obligations can also be extravagant (witness the divorces of the super-rich) or be supplemented by earnings if the bankrupt debtor also is employed. Consequently, Congress limited the exemption of alimony and other marital support payments to only the amount which would be necessary for the support of the debtor and the debtor's dependents.

■ In summary, the purpose of the first four subsections of Section 522(d)(10) is to protect a debtor's immediate, postpetition livelihood. The focus of those four subsections is upon the benefits the debtor is currently receiving, not the expectancy of receiving benefits at some later date. When debtors file for bankruptcy relief, they exempt social security, public assistance, unemployment compensation, and alimony because they are presently receiving those benefits. No one suggests that the first four subsections of Section 522(d)(10) were also intended to encompass a debtor's right to receive payments on account of public assistance, unemployment compensation, alimony, or social security at some future date because of some subsequent change in the debtor's circumstances.

Congress continued this theme when it enacted the final subsection of Section 522(d)(10), that being the subsection which exempts the "right to receive a payment under a stock bonus, pension, profitsharing, annuity, or similar plan or contract on account of illness, disability, death, age or length of service...." As with the other four subsections, the focus is upon the beneficiary, not the interest holder.[10] The

---

**9.** The legislative history underlying Section 522(d)(10) states:

> Paragraph (10) excepts certain benefits that are **akin to future earnings of the debtor.** These include social security, unemployment compensation, or public assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, alimony, support or separate maintenance (but only to the extent reasonably necessary for the support of the debtor and any dependents of the debtor), and

> benefits under a certain stock bonus, pension, profitsharing, annuity or similar plan based on illness, disability, death, age or length of service.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 361–362 (1977) (emphasis added).

**10.** While it is possible for a debtor to be both the owner/settlor and the beneficiary of a retirement plan (e.g., payments made to the settlor of an IRA on account of her age), only a beneficiary may receive payments on ac-

presumption underlying subsection (E) is the same as that underlying the other subsections of Section 522(d)(10). Congress has presumed that bankrupt debtors who are currently receiving benefits from a pension or similar plan on account of "illness, disability, death, age or length of service" normally depend upon a continuation of these payments post-petition for their livelihood. However, Congress also recognized the benefits received under such plans, like payments received on account of alimony, could be extravagant or could otherwise be supplemented by other sources of revenue (e.g., social security or wages). Therefore, to avoid abuse of this exemption, Congress also limited benefits received under this provision to only those which are necessary for the support of the debtor and the debtor's dependents.[11]

Many courts have rejected my interpretation of Section 522(d)(10)(E) because there is no express language within that subsection which limits the exempt payments to only those which the debtor is presently receiving at the time of his or her bankruptcy.

> We decline the Trustee's invitation to read into the subject section of the Code a restriction to the right to receive payments presently, to the exclusion of a present right to receive payments in the future. The language of the section does not include words like "presently," "currently," or "immediately."

*In re Carmichael,* 100 F.3d at 379.

However, when subsection (E) is read in the context of the other four subsections of Section 522(d)(10), the present/future distinction becomes apparent. As already discussed, the overall purpose of Section 522(d)(10) is to ensure that recipients of non-wage payment streams who file for bankruptcy relief will continue to receive those payments post-petition without interference by the bankruptcy trustee if these payments are necessary for the support of the debtor and the debtor's dependents. Such payments are "akin to the future earnings of the debtor"[12] which are excluded under Section 541(a)(6). If the exemptions set forth in the first four subsections of Section 522(d)(10) refer to benefits being currently received, then it stands to reason that the right to payment referenced in subsection (E) should also be limited to a current right. It seems to me that the burden is not on those who assert that Section 522(d)(10)(E) is limited to the exemption of current benefits to explain why words such as "currently" or "immediately" are absent from that section. Rather, the burden should be on those who assert that Section 522(d)(10)(E) includes the exemption of future benefits to explain why Congress was not more precise in its language if it intended this subsection to accomplish more than what was intended with respect to the first four subsections of Section 522(d)(10)(E).

██ My interpretation of Section 522(d)(10)(E) also harmonizes the further requirement that the payment received be reasonably necessary for the support of the debtor and the debtor's dependents. If the payments which may be exempted are limited to only those which the debtor has a current right to receive, then it follows that only the debtor's immediate needs be considered. Bankruptcy courts frequently make these types of assessments when considering the confirmation of Chapter 12 and Chapter 13 plans.

However, if the payments which may be exempted under Section 522(d)(10)(E) are

---

count of death, which is also a qualifying payment under Section 522(d)(10)(E).

**11.** Congress went one step further with respect to benefits received on account of age or length of service from an insider plan that is not qualified under the Internal Revenue Code. 11 U.S.C. § 522(d)(10)(E)(i)-(iii). In

effect, Congress determined that a debtor receiving benefits under such a plan under such circumstances simply does not need those benefits to ensure his or her "fresh start."

**12.** H.R.Rep. No. 595, 95th Cong. 1st Sess. 361–362 (1977).

also to include the right to receive payments at some future date, the requisite consideration of the debtor's support becomes nebulous. Courts which have concluded that Section 522(d)(10)(E) exempts the retirement benefit if the debtor is entitled to receive a payment on account of age at any time have measured the debtor's support needs at the time she would retire. *See, e.g., In re Link,* 172 B.R. 707, 710–11 (Bankr.D.Mass.1994); *In re Hickenbottom,* 143 B.R. 931, 934 (Bankr. W.D.Wash.1992); *In re Flygstad,* 56 B.R. 884, 890 (Bankr.N.D.Iowa 1986).[13] However, retirement may be 10, 20, or even 30 years away. As a consequence, judges who adopt this approach must exercise skills typically attributed to soothsayers and fortunetellers. A court has no better chance than a sideshow palm reader to ascertain what boons or banes may befall a debtor during the frequently long interval before retirement payments will finally commence under the plan in question.

The task is even more difficult for disability plans because the court must not only foretell the probability of the debtor's becoming injured at some future date but also when that injury may occur. Death benefits under qualifying plans create a different but equally difficult problem. In those instances, the court must first foretell when the third party will die and then ascertain the beneficiary's needs at that time. The court might also have to speculate as to the amount which the third party herself may possibly withdraw from the plan prior to the debtor's becoming eligible for payments upon her death.

I find it hard to believe that Congress intended the courts to engage in such speculation when it enacted Section 522(d)(10)(E). Clearly, Congress could have found a far more simple way of ensuring that an exemption of future retirement benefits not be abused. For example, Congress has prevented the potential abuse of the federal exemptions for personal residences, vehicles, household furnishings, jewelry, and tools of the trade by imposing monetary ceilings. 11 U.S.C. § 522(d)(1)-(4) and (6). There is no reason why Congress could not have addressed future retirement benefits in a similar manner if it in fact had intended future retirement benefits to be exempt. Indeed, Congress could have accounted for the variation in time when a particular debtor might ultimately receive his retirement benefit by establishing a series of ceilings which would be directly related to the age of the debtor at the time of the bankruptcy filing.[14]

That Congress could have chosen such an alternative is not in and of itself conclusive that Congress did not intend Section 522(d)(10)(E) to be the vehicle through which a debtor could exempt the portion of her retirement benefits needed to support her and her dependents. However, it does impose an even greater burden upon those who wish to broadly interpret Section 522(d)(10)(E) in this fashion to establish that this was in fact Congress' intent. The burden is particularly great given that the "reasonable needs" requirement of Section 522(d)(10)(E) easily squares with the narrower interpretation that I have given to this section.

**13.** These courts have simplified the process somewhat by limiting the inquiry to whether the debtor could replenish the amount in the IRA or other plan by the time the debtor reaches retirement age. *See, e.g., In re Link,* at 710–11. However, this solution skirts the issue that Congress has squarely put before the courts when a Section 522(d)(10)(E) exemption is claimed: whether the benefit claimed as exempt is reasonably necessary for the support of the debtor and the debtor's

dependents. That a debtor may or may not be able to replenish a fund does not answer that question. The court must still determine whether all or a portion of those funds may be needed by the debtor at that future date even if the debtor were to double, triple, or quadruple the existing fund.

**14.** For example, the exemption might be $5,000.00 for a debtor who is fewer than thirty years old, $15,000.00 for a debtor between the ages of 30 and 40, etc.

The primary statutory argument for including IRAs within Section 522(d)(10)(E) is that the exclusionary language that completes that subsection references the section of the Internal Revenue Code which concerns only IRAs. 26 U.S.C. § 408. The courts which have found IRAs to be exempt under Section 522(d)(10)(E) reason that it would be absurd for Congress to have included a reference to IRAs in this portion of Section 522(d)(10)(E) if it had intended to exclude IRAs altogether. *See, e.g., In re Carmichael,* 100 F.3d at 378; *In re Jurgensen,* 248 B.R. at 98; *In re Hermes,* 239 B.R. at 494–95. This logic is inescapable if the IRA itself is to be the object of the exemption. However, if, as I believe, the focus of Section 522(d)(10) is upon whether the debtor is currently eligible for payments under the IRA on account of one of the enumerated criteria at the time of filing, then there is no inconsistency. That is, debtor may exempt payments to be paid under an IRA if the IRA itself is eligible (i.e., it is outside the three criteria set forth in subsections (i) through (iii) of Section 522(d)(10)(E)), the debtor meets the age threshold required to receive payments under the IRA, and the payments are necessary for the support of the debtor and the debtor's dependents.

██ Most other arguments for including IRAs within Section 522(d)(10)(E) are based upon public policy. For example, in *Carmichael,* the court concluded that the exclusion of IRAs from the Section 522(d)(10)(E) exemption would "penalize self-employed individuals for their choice of the form in which their retirement assets are held. This result would be antithetical to Congress' solicitude for retirement benefits for self-employed individuals." *In re Carmichael,* 100 F.3d at 378. This conclusion is premised upon the assumption that Congress intended the four specific types of plans identified in Section 522(d)(10)(E), they being stock bonus, pension, profit sharing and annuity plans, to be "per se exemptible." *Id.* at 379. However, nothing in the Bankruptcy Code nor the legislative history suggests that these specified plans were to receive prophylactic exemption under Section 522(d)(10)(E) either. The focus of such subsection (E), like the focus of the other four subsections of Section 522(d)(10), is upon the payment stream, not the asset. Therefore, a debtor's overall interest in her pension or profit sharing plan is no more exempt under Section 522(d)(10) then a debtor's interest in her IRA or her alimony. What is exempt is the continued right to receive payments under the pension plan, profit sharing plan, or IRA if the recipient is currently receiving those payments on account of age or one of the other criteria, the debtor needs these payments for support, and the plan or contract itself meets the eligibility requirements of Section 522(d)(10)(E). Put differently, a 30 year old is no more entitled to exempt her interest in a profit sharing or pension plan under Section 522(d)(10)(E) than she would be to exempt her interest in an IRA.

I recognize the consequences of my decision to limit Section 522(d)(10)(E) in this manner. A person could lose her IRA if she filed for bankruptcy the day before she turned 59½ (the typical age for eligibility under an IRA) but could exempt most if not all of it if she waited one more day. However, "timing" inequities exist throughout the Bankruptcy Code. A debtor who is expecting an inheritance from an ailing aunt is well advised to file his bankruptcy petition sooner rather than later. 11 U.S.C. § 541(a)(5). Conversely, a debtor who has made a gift or preferred a creditor may want to forego filing until the preference period has expired or the statute of limitations has run. In this Circuit, whether the bankruptcy petition was filed the day before or the day after a foreclosure sale will have a significant impact upon whether the debtor may keep his or her house in the bankruptcy. *In re Glenn,* 760 F.2d 1428 (6th Cir.1985).

██ Second, even if the result is unfair, it is unfair with respect to all retire-

ment benefits, and not just those deriving from IRAs. A person who is not currently eligible for retirement benefits under a plan is not eligible for the Section 522(d)(10)(E) exemption regardless of whether the benefits are to come from an IRA, a pension plan, a stock bonus plan, a profitsharing plan, or an annuity. If Section 522(d)(10)(E) is not available, then the debtor's future right to receive payments may be subject to liquidation. In the case of an employer-sponsored pension plan, it is unlikely that the interest will be liquidated because it is typically subject to anti-alienation restrictions which would exclude it from the estate altogether or the debtor's age causes the actuarial value of the interest to be insignificant. However, my interpretation of Section 522(d)(10)(E) affords the debtor with a vested, alienable interest in a pension plan no more protection from liquidation than the debtor with an interest in an IRA. If either debtor files a bankruptcy petition the day before that debtor is eligible to begin receiving payments under the plan or IRA, then the debtor's interest will be a likely candidate for liquidation.

Third, an IRA is more susceptible to liquidation than an interest in a third-party plan not because it was created by the self-employed but because it has a characteristic not typically found in third-party pension plans—the right to withdraw funds before reaching the eligible age. This immediate right to withdraw funds becomes property of the estate upon the debtor's bankruptcy filing. A trustee values the right to withdraw funds from an IRA the same as she would value the right to withdraw monies from a non-exempt savings account or the right to sell publicly traded stock. Conversely, without such a right to withdraw, a debtor's interest in a pension plan (even if it is subject to alienation) which allows for distributions only if the debtor reaches retirement age and then only so long as the debtor survives beyond retirement, generates the same excitement for the trustee as a future life estate in real estate conditioned upon surviving the current owner. Put simply, there is no money in it. It is also worth noting that the susceptibility to immediate liquidation is not unique to IRAs. Profitsharing plans, like IRAs, may allow in-service withdrawals and therefore may also be suitable candidates for liquidation if the debtor files her bankruptcy before she is eligible for plan benefits.

## CONCLUSION

In summary, I am not holding that IRAs are per se ineligible for exemption under Section 522(d)(10)(E) any more than I am holding that other types of pension plans are per se eligible. Section 522(d)(10)(E) applies equally to all types of retirement plans. What I do hold is that Section 522(d)(10)(E) applies only to the exemption of benefits which the debtor is currently eligible to receive on account of one of the criteria enumerated in that subsection. It is irrelevant whether those benefits derive from a stock bonus, pension, profit sharing, annuity or similar plan or contract (such as an IRA).

Not only does this interpretation reconcile the apparent inconsistencies within Section 522(d)(10)(E) itself, but is also harmonizes the subsection with the other subsections which Congress included within Section 522(d)(10). While there may be any number of policy reasons to protect future retirement benefits under an IRA notwithstanding its immediate accessibility, I have found nothing in either the Bankruptcy Code or the legislative history to warrant an interpretation of Section 522(d)(10)(E) which would accomplish this result. Whether the entire interest in a pension plan, a profitsharing plan, or an IRA should be exempt is something to be debated by members of Congress. However, until Congress makes that decision, I am constrained to enforce only those exemptions which Congress has presently permitted.

The Trustee is directed to proceed with the administration of the five IRAs

claimed as exempt in a manner consistent with this decision. If Debtors were eligible to receive payments from any of those IRAs on account of any of the criteria set forth in Section 522(d)(10)(E) at the time of their bankruptcy filing, then a hearing may be required to determine whether the payments to be paid are necessary to support them and their dependents. If the Debtors were not eligible, then Trustee shall submit a proposed order to the Court denying Debtors' exemption in the IRAs or reschedule for hearing his objection to Debtors' exemptions if further action of the Court is required.