In re Tracy L. HARBAUGH.

Tracy L. Harbaugh, Debtor–Appellee,

v.

Samuel D. Sweet, Chapter
7 Trustee, Appellant.

No. 00–73129.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 23, 2001.

Thomas J. Budzynski, Clinton Twp., MI, for appellant-trustee.

Robert P. Denton, Saginaw, MI, for appellee-debtor.

## ORDER

COOK, District Judge.

On June 30, 2000, the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court"), filed an Order in which it rejected the objection of the Appellant, Trustee Samuel D. Sweet, to a claim of exemption that had been filed by the Appellee, Debtor Tracy L. Harbaugh. For the reasons that are set forth below, the Court will affirm the Order of the Bankruptcy Court.

### I

On August 24, 1998, the Genessee County Circuit Court of Michigan entered a consent judgment that dissolved Harbaugh's marriage of five years. Pursuant to the terms of the consent judgment, she retained the physical custody of her twin children, Rachel and Zachary, who were born on September 7, 1996. Although Harbaugh's former husband retained joint legal custody of the children, the twins have been dependent upon her for support. (R.Ex. 2 at 2–3.)

According to one section in the consent judgment ("Property Settlement"), Harbaugh obtained a 1988 Oldsmobile automobile and the personal property (excluding certain major appliances) within the marital home in exchange for the termination of her rights to the marital home, a restaurant, and two family businesses.

Another part of the consent judgment ("Alimony or Spousal Support") required Harbaugh's former husband to pay her a total of $48,500.00 in alimony. A sum of $2,000.00 became due within a period of fourteen days from the entry of the consent judgment, with the balance to be paid in weekly installments of $117.00. According to the terms of this consent judgment, these payments are to continue for a total of 399 weeks (or approximately seven and one-half years from the date of the judgment). It was their intention that these payments would be deducted from the income of Harbaugh's husband and included in her income for purposes of federal and state taxation. No further conditions were placed upon the alimony right by the state court.

Approximately one year after the divorce (August 26, 1999), Harbaugh filed for bankruptcy under Chapter Seven of the United States Bankruptcy Code. At that time, Harbaugh's husband owed approximately $42,000.00 to her under the terms of the consent judgment. In Harbaugh's petition, she claimed that her right to receive alimony was exempt from the bankruptcy estate pursuant to 11 U.S.C. § 522(d)(10)(D). On October 27, 1999, the Trustee objected and sought a hearing on the issue.

During the evidentiary hearing on December 8, 1999, Harbaugh testified that, at the time of the divorce, she wanted half of the value of the family's property interests. However, fearing that she would receive nothing, Harbaugh accepted an offer of $48,500.00, which would be payable to her as alimony. (Tr. at 33:14–:24.) On September 10, 2000, she executed a deed to her former husband, and, in so doing, relinquished all of her interest in the marital house (Tr. 57:03–:16.) Harbaugh also admitted that the alimony grant was not modifiable for any reason, even if she received some sizable windfall from another source. (Tr. at 35:08–36:12.) Nonetheless, it is her contention that she has needed the money in order to support herself and her children.

At the conclusion of the hearing, the Bankruptcy Court (1) concluded that the alimony amount was reasonably necessary for Harbaugh's support and (2) reserved

for further briefing the issue of whether her husband's alimony payments are exempt under 11 U.S.C. § 522. In a subsequent written Order, the Bankruptcy Court rejected the Trustee's objection. An appeal by the Trustee followed.[1]

## II

This case presents two related issues. First, how should the Court interpret "alimony" under 11 U.S.C. § 522(d)(10)(D) when a party seeks to exempt a particular award from the bankruptcy estate? Second, is Harbaugh's award of $42,000.00 properly characterized as alimony or is it a property settlement which is not exempt from the bankruptcy estate? According to the Trustee, the consent judgment provides for the unconditional payment of a sum certain, which is an obligation that is not in the nature of spousal support. Instead, he argues that it is a vested property right, which is not exempt from the bankruptcy estate under federal law.

## A

■ Throughout these proceedings in bankruptcy, the burden is on the Trustee to prove that Harbaugh's exemption is objectionable. Legal issues receive a *de novo* examination. *See In re Calhoun*, 715 F.2d 1103, 1110–11 (6th Cir.1983). By contrast, the factual findings of the Bankruptcy Court are reviewed for clear error. *See In re Perlin*, 30 F.3d 39, 40 (6th Cir.1994). "A factual finding is clearly erroneous when, though there is evidence to support that finding, 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Ables*, 167 F.3d 1021, 1035 (6th Cir.1999) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948)). At the same time, if the "account of the evidence [by the trial court] is plausible in light of the record viewed in its entirety," the determination will not be reversed even if the reviewing tribunal would have reached a different finding if it had been sitting as the trier of fact. *Id.* (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504 (1985)).

## B

When a person files for bankruptcy, his or her assets are pooled in an estate from which creditors draw. Section 522 of Title 11 of the United States Code provides that certain property is exempt from the estate and thus it is generally unreachable. *See* 11 U.S.C. § 522(b)–(d). By the terms of subsection (d)(10), a debtor can exempt enumerated income benefits, including the debtor's "right to receive ... alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(10)(D). Harbaugh has invoked this subsection in an attempt to prevent certain payments, which she and a Michigan court have characterized as alimony, from becoming part of her bankruptcy estate.

■ The Court is called upon to determine the definition of "alimony" under section 522. Although the definition of alimony ordinarily falls within the realm of state family law, the issue also concerns the federal bankruptcy statutes. Thus, it is unclear which body of law should be relied upon when searching for an appropriate definition of "alimony" that would be applicable to this litigation. *But cf. Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by

---

1. This appeal arises out of the operation of Bankruptcy Rule 8001. The jurisdiction of the Court over this bankruptcy appeal is premised upon 28 U.S.C. § 1334. As of this date, no response has been filed in opposition to the Trustee's appeal.

both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' ").

In one line of cases, some courts have concluded that the definition of alimony under section 522 is a matter of federal law. *See In re Ellertson,* 252 B.R. 831, 833 (Bankr.S.D.Fla.2000); *In re Sheffield,* 212 B.R. 1019 (Bankr.M.D.Fla.1997); *In the Matter of Joseph,* 157 B.R. 514, 518 (Bankr.D.Conn.1993); *In re Benjamin,* 136 B.R. 574, 576 (Bankr.S.D.Fla.1992). The Bankruptcy Code discusses alimony with reference to exemptions and discharges under sections 522(d)(10)(D) and 523(a)(5)(B),[2] respectively. It is well settled that federal law controls the meaning of this word as it relates to discharges under section 523. *See, e.g., In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). In *Benjamin,* the court did not find any logical reason to distinguish, as a matter of statutory interpretation, alimony that is subject to exemption from alimony which is subject to discharge. Rather, the *Benjamin* court concluded that, in the absence of any statutory text to the contrary and for the sake of legislative uniformity, alimony should have only one meaning under the Bankruptcy Code, and federal law should dictate such definition.

However, this approach has been recently criticized. In *In re Bentley,* 245 B.R. 684 (Bankr.D.Kan.2000), the court observed that, although the text of section 523(a)(5)(B) expressly permits the federal courts to consider the substance of a liability that is designated as alimony, Section 522 does not contain any similar language. The *Bentley* court opined that, although

the *Benjamin* method "[p]erhaps ... represents good policy, ... Congress has not adopted it." *Id.* at 687. Accordingly, the *Benjamin* analysis was rejected as "judicial legislation." *Id.*

In the case below, the Bankruptcy Court, in recognizing this split of authority, concluded that the *Benjamin* approach is the more tenable of the two. It noted that the text of section 522 "empowers each state to 'opt-out' of the federally structured exemptions or to replace the scheme with its own specific compendium of exemptions." *In re Dixon,* 885 F.2d 327, 329 (6th Cir.1989). Thus, if a state seeks to define its own alimony provisions, it can do so. Otherwise, a uniform, federal definition ostensibly will prevail. The Bankruptcy Court also quoted *In re Pine,* 717 F.2d 281, 282–83 (6th Cir.1983), *abrogated on other grounds by Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), for the proposition that in Section 522, "[t]he House of Representatives ... sought to create nationwide uniformity by establishing one list of exemptions contained in the federal Bankruptcy Code." As a final supporting point, federal law controls the definition of alimony under Section 523, the United States Tax Code, and other federal statutes. *See* 26 U.S.C. § 71; 42 U.S.C. § 659. Thus, the practice of delineating the contours of cognizable alimony is not exclusively within the domain of state expertise. *But see generally DeSylva v. Ballentine,* 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956) ("[T]here is no federal law of domestic relations, which is primarily a matter of state concern.").[3]

After an exhaustive review of the statutes, the legislative history, the case law,

---

**2.** Subsection 523(a)(5)(B) provides that
[a] discharge under ... this title does not discharge an individual debtor from any debt to a ... former spouse ... for alimony to ... such spouse ... in connection with a[n] ... order of a court of record ..., but [only] to the extent that such debt includes a liability designated as alimony [that] is actually in the nature of alimony. ...

**3.** The Bankruptcy Court considered diverse practical reasons that may have led Congress to inadvertently omit any language from Section 522 that directs the federal courts to examine the substance of alimony claims. The Court need not, and will not, speculate as to such matters in resolving the instant appeal.

and various treatises of bankruptcy law, the Court is unable to find any empirical basis upon which to reach a definite conclusion as to whether Congress intended for the alimony provisions of sections 522 and 523 to directly parallel one another. Moreover, little reliance can be placed upon the existence of 26 U.S.C. § 71 and 42 U.S.C. § 659, which can be interpreted to pull in different directions as to the proper federal definition of alimony. *Compare* 26 U.S.C. § 71 (identifying taxable alimony as money that, among other things, is designated to be "alimony" by divorce decree), *with* 42 U.S.C. § 659 (alimony "means periodic payments of funds for the support and maintenance of ... former spouse" except child support and money that is provided as a property settlement). Nevertheless, Congress left a sufficient record, with which to reach a decision as to the meaning of "alimony" in section 522(d)(10)(D).

An analysis by this Court must begin with an examination of the plain language within the statute. As the Bankruptcy Court correctly observed, the term "[c]omes from Latin 'alimonia' meaning sustenance, and means, therefore, the sustenance or support of the wife by her divorced husband and stems from the common-law right of the wife to support by her husband." Black's Law Dictionary 73 (6th ed.1990); *see also* Homer Clark, *The Law of Domestic Relations in the United States* § 16.1, at 621 (2d ed.1988) ("Alimony continues the support which the wife was entitled to receive while the marriage existed."). Alimony has long been inherently linked to the ideas of support and sustenance.

■ Additionally, the scant legislative history that is available suggests that Congress intended alimony, as discussed in section 522, to mean only an award that the payor and the recipient intended to be used for purposes of support. As a general matter, only "property" can become a part of the bankruptcy estate. Prior to the Bankruptcy Reform Act of 1978, which created section 522(d)(10)(D), "assets that were needed for a debtor's fresh start were not considered property." Benjamin Weintraub & Alan N. Resnick, *Bankruptcy Law Manual* ¶ 4.03, at 4–4 (4th ed.1996); *see generally* 2 Hon. William L Norton, Jr., Bankruptcy Law & Practice 2d § 46:1, at 46–3 (1997) ("Individuals both in and out of bankruptcy have historically been granted a right to protect from the reach of creditors property essential to life and livelihood."). Since alimony has been traditionally considered to be necessary to the recipient's sustenance, it was not classified as property in bankruptcy law and did not fall within the jurisdiction of the federal bankruptcy courts. The 1978 Act changed the status of alimony by bringing it under the newly broadened umbrella of the bankruptcy estate. *See* H.R.Rep. No. 95–595, at 175 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6136 ("The bill makes significant changes in what constitutes property of the estate.... The bill ... expands the categories of covered property to include life insurance benefits and divorce or alimony settlements."). By redefining property and preliminarily laying a jurisdictional claim to alimony in bankruptcy, the legislature acknowledged that it was reaching sustenance-related monies.

At the same time, the statute made alimony generally exempt from disposition in bankruptcy. In so doing, Congress clearly stated that the federal exemptions, including the exemption for alimony, were enacted because of their role in providing necessary support for the debtor. *Id.* at 176, *reprinted in* 1978 U.S.C.C.A.N. at 6136. ("The exemption section will permit an individual debtor to take out of the estate that property that is necessary for a fresh start and for the support of himself and his dependents."). The House of Representatives implicitly amplified this point when it stated,

[p]aragraph (10) exempts certain benefits that are akin to future earnings of the debtor. These include social security, unemployment compensation, or pub-

lic assistance benefits, veteran's benefits, disability, illness, or unemployment benefits, ... and benefits under a certain stock bonus, pension, profitsharing, annuity or similar plan based on illness, disability, death, age or length of service.

*Id.* at 362, *reprinted in* 1978 U.S.C.C.A.N. at 6318; *Revision Notes and Legislative Reports,* 11 U.S.C.A. § 522, at 23, 25 (West 1993) (same). One federal court in Michigan has examined this piece of legislative history and observed that a common thread runs throughout subsections 522(d)(10)(a)–(d):

> [E]ach enumerated benefit or right to payment is based upon a condition of the recipient typically associated with immediate need. For example, the elderly and disabled frequently rely upon social security and veterans benefits as their sole means of support. The unemployed depend upon unemployment compensation and the poor depend upon public assistance. *A divorced spouse and his or her dependents require alimony or other support for their basic needs,* especially if they have no other resources.

*In re Dale,* 252 B.R. 430, 435 (Bankr. W.D.Mich.2000) (emphasis added).[4] The commonality reveals "a Congressional design to ensure that unemployed or under-employed debtors who depend upon benefits and other payments for their livelihood are offered the same opportunity for a 'fresh start' as debtors who are fully employed." *Id.*[5] The *Dale* court concluded that subsections 522(d)(10)(A)–(D) have the purpose of "protect[ing] a debtor's immediate, post-petition livelihood." *Id.* at 436. This aim clearly reveals that Congress had support-related monies in mind when it enacted section 522(d)(10)(D).

The Court is also persuaded by the reasoning of the Bankruptcy Court that Congress intended section 522(d) to create federal, as opposed to state law, exemptions. The House of Representatives sought to achieve nationwide uniformity on the issue. By contrast, "[t]he Senate wished to preserve the prerogative of the states to set exemptions for debtors as had been the practice under the old Bankruptcy Act.... Acting on a conference committee report, Congress passed a compromise bill containing elements of each plan." *In re Pine,* 717 F.2d at 282–83. Pursuant to the compromise, state and federal catalogues of exemptions coexist. The Senate has assured that states will control the terms of their own exemptions. In exchange, the House of Representatives has procured a set of uniform federal standards that can be elected.[6] A federal exemption is at

4. *See* Hon. William Houston Brown, *Political & Ethical Considerations of Exemption Limitations: The "Opt-Out" as Child of the First & Parent of the Second,* 71 Am.Bankr.L.J. 149, 169–70 ("The purposes behind exemptions are inseparable from social policies endorsed by legislative bodies and courts, such as the provision to the deserving debtor of property necessary for his physical survival, ... the enablement of the debtor's financial rehabilitation and future earning ability; [and] the protection of the debtor's family from the adverse consequences of impoverishment.... The emphasis most often is upon the allowance of the basic necessities of life, with the somewhat contradictory qualification that the debtor should not be left destitute and a public charge.") (quoting H.R.Rep. No. 95–595, at 126 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6089, *Norwest Bank Nebraska, N.A. v. Tveten (In re Tveten),* 848 F.2d 871, 876 (8th Cir.1988); *Finance One v. Bland (In re Bland),* 793 F.2d 1172, 1173 (11th Cir.1986); Alan N. Resnick, *Prudent Planning or Fraudulent Transfer? The Use of Nonexempt Assets to Purchase or Improve Exempt Property on the Eve of Bankruptcy,* 31 Rutgers L.Rev. 615, 621 (1978)) (internal quotation marks omitted).

5. The court continued, "[w]hat Congress recognized was that there would be debtors filing for bankruptcy relief who depended upon non-wage payment streams for their livelihood and that many of these debtors needed these benefits as much, if not more, than debtors who could continue to work. It is in this sense that the 'benefits' enumerated in Section 522(d)(10) are 'akin to future earnings of the debtor.'" *Id.* at 436.

6. Michigan has not opted out of the national standards and Harbaugh consequently has elected them.

issue here, and, pursuant to the compromise, it should be interpreted to have a nationally uniform meaning. Such uniformity would be undermined if the federal courts gave unquestioning credence to the varying case-by-case nomenclature offered by state courts.

For each of these reasons, the text, history, and structure of the statute suggest that Congress intended for section 522(d)(10)(D) to exempt only those monies, and potentially other equivalent awards, that concern general spousal sustenance. Unlike the approach taken in the *Benjamin* line of cases, this Court reaches its conclusion without any reference to section 523. At the same time, it concurs in the recognition by the *Joseph* court that with respect to both sections, "the primacy of the bankruptcy laws may not be subverted by labels placed on obligations by parties themselves or by nonbankruptcy courts." *Joseph,* 157 B.R. at 518. Instead, when a federal exemption is invoked, a federal definition of alimony applies.

 Having settled upon a definition for alimony in section 522, the Court turns to the full text of the provision. The exemption applies to a debtor's right to receive alimony, insofar as it is "reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(10)(D). Today, the Court has interpreted alimony as being money that the parties intend for the purpose of providing sustenance for a spouse. *See generally Byrnes v. Marks,* 211 F.3d 1268 (Table), 2000 WL 420678, *4 (6th Cir.2000) ("In determining whether an alimony provision provides for alimony in gross or periodic alimony, this Court generally construes the agreement to give effect to the parties' intent expressed in that agreement.") (citations omitted). Therefore, section 522(d)(10)(D), when read as a whole, exempts any payments from the bankruptcy estate that (1) are intended by the parties or the state court to support a spouse and (2) are, in the judgment of the bankruptcy court, reasonably necessary for such purpose.[7] By focusing on the questions of whether divorcing parties have intended purported alimony to be used for basic sustenance and if the amount is reasonably necessary to achieve that purpose, the Court can bypass the formal issue of nomenclature, look to the substance of the obligation, and, in the meantime, uphold Congress' intent.[8]

 In the present case, the Bankruptcy Court has determined that, as a matter

---

7. The Court has come to the same result as the one that was prescribed by the *Benjamin* court. Pursuant to section 523, bankruptcy courts examine whether the parties intended the challenged payments to provide support, whether the obligations provide support, and whether the amount of the obligation is unreasonable under traditional notions of support. *See Calhoun,* 715 F.2d at 1109–10. The test that has been implemented by the Court today is essentially the same. The only difference is the means by which the Court has reached its conclusion.

8. Although they have no bearing upon the legal decision by the Court, considerations of public policy tend to support the interpretation which has been set forth above. *See* Catherine E. Vance, *Till Debt Do Us Part: Irreconcilable Differences in the Unhappy Union of Bankruptcy and Divorce,* 45 Buff.L.Rev. 369, ____ (1997) (discussing 11 U.S.C. § 523(a)) ("Analyzing the substance rather than the form of the decree is a necessity, as there may be a variety of reasons that particular labels have been attached to the provisions of the decree. For instance, the parties may have drafted their decree themselves or used a commercially available form document. In addition, the bankruptcy courts' disregard of labels helps to alleviate the variances in state law with respect to alimony statutes, thereby creating, at least in theory, a uniform standard in the bankruptcy courts. The relevant inquiry is whether a distribution labeled as property settlement masks the reason behind the distribution—that one spouse was awarded certain property because the court, or the parties themselves, deemed that property essential to the recipient spouse's support."). However, this approach is not without its critics. An excessive focus on the determination of whether a recipient is needy can tend to disfavor some recipients—often women—who more successfully avail themselves of educational and employment opportunities.

of fact, the payments at issue constitute alimony. It has set forth the following six reasons for its conclusion: First, the Harbaughs and the Michigan court identified the challenged payments as being alimony. Second, according to the judgment, Harbaugh and her former husband intended, with respect to income taxation, for the payments to be deductible for the payor and includible in the payee's gross income. Such provision parallels the treatment of alimony under the laws of federal income taxation. See 26 U.S.C. § 71. Third, to be deductible for the payor, such payments must terminate upon the payee's death. See id. Thus, by implicitly invoking the federal tax laws, Harbaugh and her former spouse ostensibly intended to terminate the payments if she dies prior to the complete satisfaction of the award. Fourth, Harbaugh's testimony confirmed her understanding that payments would cease upon her death. (Tr. 36:13–22.) Fifth, at least with respect to awards of periodic alimony, two Michigan statutes expressly bestow authority upon the state courts to modify an award in light of new facts or to terminate payments in the event of the payee's marriage or death. See Mich. Comp.Laws §§ 552.13(2), 552.28. Hence, some of the contingencies that are traditionally associated with alimony awards can be said to have been statutorily incorporated into the consent judgment. Sixth, the payments are made directly to Harbaugh.

In response, the Trustee points out that the record contains testimonial and documentary evidence that Harbaugh, who had wanted half of their property interests, obtained the sum of $48,500.00 in exchange for her relinquishment of other claims against the family's assets. The Bank-

ruptcy Court acknowledged that, under one reading, these facts could be construed to find that Harbaugh actually received a property settlement, as opposed to alimony. On the other hand, it noted an equal possibility that if the marital estate was insufficient to provide Harbaugh with support, Mich.Comp.Laws § 552.23(1) gave to the state court the power to award her interests in or items out of her former husband's separate property. It was Harbaugh's belief at the time of the divorce proceeding that she did not have any formal right to claim the property as her own. Thus, her final award can also be construed as a settlement under which she ceded claims to further spousal support, rather than claims to property. Notably, the record revealed that there was little value to be shared in the marital property. Finally, the Bankruptcy Court extensively and persuasively discussed why the evidence failed to show that Harbaugh intended to exchange her dower rights for the challenged payments. The Trustee presented a reasonable argument, but equally compelling and contrary arguments remained. Hence, as to each contention, the Bankruptcy Court found the evidence to be equivocal and concluded that the Trustee had failed to carry his burden.

In reviewing the Bankruptcy Court's findings, the Court notes that this is an instance of the legal quagmire [9] which often results from the attempt to distinguish an award of alimony from a property settlement. The confusion is largely inevitable because there is little, if any, economic difference between the two forms of payment, see Margaret F. Brinig, *Property Distribution Physics: The Talisman of*

---

9. See Weintraub & Resnick, *supra*, ¶ 3.09[5], at 3–72; Vance, *supra*, at 491 ("With rare exceptions, the line between settlement and support payments will be faint, irregular and blurred. Partly this arises from the recipient's indifference to the nature of the payment."); David M. Susswein, *Divorce Related Property Division v. Alimony, Maintenance, and Support in the Bankruptcy Context: A*

*Distinction Without a Difference?*, 22 Hofstra L.Rev. 679 (1994); Jana B. Singer, *Divorce Obligations and Bankruptcy Discharge: Rethinking the Support/Property Distinction*, 30 Harv.J.Legis. 43, 45 (1993) ("[T]he Bankruptcy Code's distinction between nondischargeable support awards and dischargeable property distributions has become untenable.").

*Time & Middle Class Law,* 31 Fam.L.Q. 93, 94–95 (1997) ("Despite . . . legal differences, the economist sees no real distinction between the various forms of financial allocation. The bridging concept is that of human capital, which was first popularized in the family law context by Joan Krauskopf.") (citations omitted), and equitable distribution has arisen as the dominant means of distributing marital property upon divorce.

Despite, and perhaps because of, the difficult distinction that the Bankruptcy Court was called upon to make, it did not commit clear error in holding that the Trustee failed to meet his burden to prove that Harbaugh's objection was improper. Its observations were firmly grounded in the record below. Moreover, two other factors support the finding. First, Harbaugh was adamant in her testimony that she needed the payments, which amount to approximately six thousand dollars per year for seven and one-half years, for purposes of sustenance. Second, she had no other substantial income, and six thousand dollars per year is hardly enough to lend proper support to anyone. Although the case is a murky one as to the precise form of the obligation, the supportive substance of the payments is clear. The Bankruptcy Court had sufficient evidence to warrant a conclusion that the Trustee failed to carry his burden, and its Order is affirmed.[10] Accordingly, this Court holds that the challenged payments are exempt from inclusion in the bankruptcy estate.

**IT IS SO ORDERED.**

---

10. The Bankruptcy Court determined that the payments were in an amount that is reasonably necessary to support Harbaugh, and the Trustee has not appealed such decision.