**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 6, 2003**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50411
_____

IN THE MATTER OF: ELIZABETH ANN EVERT,

Debtor.

------------------------------------------------------------------

MARSHA G. MILLIGAN, TRUSTEE;
C. DANIEL ROBERTS & ASSOCIATES P.C.,

Appellants,

versus

ELIZABETH ANN EVERT,

Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

Before GARWOOD, SMITH and BARKSDALE, Circuit Judges.

GARWOOD, Circuit Judge:

After Elizabeth Ann Evert (Evert) filed for bankruptcy under

Chapter 7 of the Bankruptcy Code, Appellant Marsha G. Milligan,

Trustee, (Milligan) was appointed trustee. Milligan objected to Evert's attempt to claim as exempt property under 11 U.S.C. § 522(d)(10)(D) a $65,000 promissory note payable to her and executed by her former husband which she had received pursuant to their divorce. The bankruptcy court found that the promissory note constituted "alimony, support, or separate maintenance" and therefore could be shielded from Evert's creditors under section 522(d)(10)(D). The district court affirmed. We reverse.

### Proceedings Below

Evert filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on March 26, 2001, and filed her amended Schedules B & C on June 4, 2001. The Chapter 7 Trustee timely filed an objection to the Debtor's amended schedules. On June 5, 2001, Evert moved the bankruptcy court to convert her case to a Chapter 13 bankruptcy. The Chapter 13 Trustee timely filed a notice of intent to prosecute the Chapter 7 Trustee's objection. After conducting a hearing and reviewing the record, the bankruptcy court entered an Order on October 31, 2001, denying the Trustee's Objection to Debtor's Amended Exemptions, as well as a Memorandum Opinion. After the Trustee timely filed a notice of appeal, the district court on April 2, 2002, affirmed the bankruptcy court. Milligan timely filed a notice of appeal to this court.

### Facts

On April 15, 1999, Evert and her then husband Keith Colvin

2

were divorced pursuant to a judgment of divorce signed and entered that day by the 345th Judicial District Court of Travis County, Texas. The judgment is also signed "Agreed and Approved as to Form And Substance" by Evert and Colvin, is entitled "Agreed Final Decree of Divorce," and includes the recitation that "[t]he parties have agreed to the terms of this Decree and further stipulate that the provisions for division of assets and liabilities are contractual." The decree is divided into sections.

In the section entitled "Child Support" Colvin is ordered to pay Evert $1,000 a month for the support of their two minor children (born in 1986 and 1988) until they become 18 (or die or marry), with provision for reduction to $800 a month when there is only one eligible child. The child support payments are ordered "made through the Travis County Domestic Relations Office . . . and then remitted by that agency to" Evert "for support of the children." Colvin is also ordered to provide and pay for health insurance covering the children.

A subsequent section of the decree divides the assets and liabilities of the parties. This section begins by stating:

> "THE COURT finds the following provisions regarding the parties' assets and liabilities are contractual and enforceable as a contract. IT IS ORDERED AND DECREED that the estate of the parties, including both separate and community property, be divided as follows:
>
> Petitioner [Evert] is awarded the following as Petitioner's sole and separate property, and Respondent [Colvin] is hereby divested of all right, title and interest, in and to such property."

3

Thereafter nine separately numbered paragraphs describe the various assets awarded Evert including cemetery lots, the couple's former house, furniture and fixtures, and one of their automobiles. The last item in this list is the $65,000 note in question, described in the list's numbered paragraph 9 as follows:

> "A promissory note executed by Respondent, payable to Petitioner in the original principal sum of $65,000.00 bearing interest at 8% per annum and payable in sixty (60) equal monthly installments of $1,317.97 each, including interest, with the first installment due and payable on May 1, 1999, and a like installment of $1,317.97 due on the 1st day of each succeeding thereafter until the note is paid in full."

Immediately thereafter, the decree states:

> "Respondent [Colvin] is awarded the following as Respondent's sole and separate property, and Petitioner [Evert] is hereby divested of all right, title, interest, and claim in and to such property."

There then follow seven numbered paragraphs describing the property awarded Colvin, including a described automobile and "[a]ny and all interest in and to the business known as Colvin Automotive, Inc." The decree next provides that, "as a part of the division of the estate of the parties," Evert shall pay and hold Colvin harmless from certain described debts, including the first and second liens on their house awarded to Evert, and Colvin shall pay and hold Evert harmless from certain described debts including "[a]ny and all charges, debts, liens or other obligations arising from or secured by property awarded to Respondent [Colvin] herein."

A still later section of the decree, entitled "Post-Divorce

4

Spousal Support (Alimony) Agreement," provides in relevant part as follows:

> "Post-Divorce Spousal Support (Alimony) Agreement
>
> 1.    Purpose and Intent of Agreement.    It is the mutual desire of the parties that . . . COLVIN ("Husband") provide a continuing measure of support for [EVERT] ("Wife") after divorce.  These support payments are intended to qualify as alimony as that term is defined in Section 71 of the Internal Revenue Code of 1954 ("the Code"), as amended, and are intended to be included in the gross income of Wife under Section 71 of the Code as amended, and deductible by Husband under Section 215 of the Code as amended.  It shall include such payments in her gross income for federal and state income tax reporting purposes, and Husband shall deduct said payments from his gross income for federal and state income tax reporting purposes.
>
> 2.    Amount of Alimony.  Husband shall pay to Wife monthly payments of alimony in the amount of $1,350.00 per month, with the first payment in the amount of $1,350.00 being due and payable on May 1, 1999, and with like payment in the amount of $1,350.00 being due and payable on the same day of each month thereafter, until April 1, 2004, with the last payment being due and payable on said date, or on the date Wife dies, whichever date is earlier in time.
>
> 3. Contractual Obligations. This support obligation undertaken by Husband is contractual in nature and is not an obligation imposed by order or decree of the Court.
>
> 4.    Termination.  The amount of monthly alimony not yet accrued and then payable under this article shall terminate with the April 1, 2004, payment, or on the date Wife, dies, whichever date is earlier in time.  There is no liability for Husband to make any payments accruing after the death of Wife, and there is no liability for Husband to make any payment in cash or property as a substitute for such payments accruing after the death of Wife.
>
> . . .
>
> 6.    Nontransferability.    Neither the agreement to

pay alimony nor the right to receive alimony under this Article is assignable or transferable."

Colvin executed and delivered the $65,000 note to Evert and thereafter made the monthly payments called for thereby.

Evert declared bankruptcy on March 26, 2001. Milligan argued that the $65,000 promissory note should be part of the debtor's estate while Evert maintained the note is "support" exempt under 11 U.S.C. § 522(d)(10)(D).

### Standard of Review

Findings of fact are reviewed under the "clearly erroneous" standard; conclusions of law are subject to *de novo* review. *Matter of Midland Indus. Service Corp.*, 35 F.3d 164, 165 (5th Cir. 1994).

### Discussion

By virtue of 11 U.S.C. § 522(d)(10)(D) a debtor may exempt from his or her bankruptcy estate "(10) the debtor's right to receive . . . (D) alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."[1]  The dispute in this case solely

---

[1]Section 522, entitled "Exemptions," provides in part as follows:

"(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. . . . Such property is –
    (1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,
    (2) . . .
    . . .
(d) The following property may be exempted under subsection (b)(1) of this

6

involves whether the $65,000 note represents "alimony, support, or separate maintenance," and does not involve whether at the time of Evert's bankruptcy the note payments were reasonably necessary for the support of Evert and her dependents.

Because there is little precedent concerning what qualifies as "alimony, support, or separate maintenance" under 11 U.S.C. §

---

section:
    (1) . . .
    . . .
    (10) *The debtor's right to receive –*
        (A) A social security benefit, unemployment compensation, or a local public assistance benefit;
        (B) a veterans' benefit;
        (C) a disability, illness, or unemployment benefit;
        (D) *alimony, support, or separate maintenance, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor*;
        (E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless –
            (I) such plan or contract was established by or under the auspices of an insider that employed the debtor at the time the debtor's rights under such plan or contract arose;
            (ii) such payment is on account of age or length of service; and
            (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), or 408 of the Internal Revenue Code of 1986.
    (11) . . ." (emphasis added).

522(d)(10)(D), the bankruptcy court and district court relied on precedent interpreting 11 U.S.C. § 523(a)(5).  While section 522 governs exemptions of various assets and rights to income of the debtor from the debtor's bankruptcy estate, section 523 (entitled "Exceptions to discharge") governs what debts of the debtor may be discharged in bankruptcy.  11 U.S.C. § 523(a) provides in relevant part that:

> "A discharge . . . does not discharge an individual debtor from any debt –
>
> (1) . . .
>
> . . .
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–
>
>> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to Section 408(a)(3) of the Social Security Act [42 USCS § 608(a)(3)], or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;
>
> (6) . . ."

The district and bankruptcy courts in this circuit have generally looked to *In Re Joseph*, 16 F.3d 86 (5th Cir. 1994), and

*In Re Dennis,* 25 F.3d 276 (5th Cir. 1994), for their interpretation of 11 U.S.C. § 523(a)(5) and applied that standard to interpreting 11 U.S.C. § 522(d)(10)(D). In *Dennis* and *Joseph,* it is stated that in interpreting section 523(a)(5) courts will generally look beyond the labels which state courts - and even parties themselves - give obligations which debtors seek to have discharged. This court in *Dennis* and *Joseph* held that a nonexclusive list of factors that should be considered in determining whether a Texas divorce related obligation constitutes alimony, support, or maintenance is: "the parties' disparity in earning capacity, their relative business opportunities, their physical condition, their educational background, their probable future financial needs, and the benefits each party would have received had the marriage continued." *In Re Dennis,* 25 F.3d at 279; *In re Joseph*, 16 F.3d at 88.

These factors were first outlined in *In Re Nunnally,* 506 F.2d 1024, 1027 (5th Cir. 1975). In *Nunnally,* this court held that the obligation to make a lump sum payment and pay attorney's fees of the former spouse contained in a divorce settlement were alimony or support and therefore were not dischageable. Noting that Texas did not have alimony at the time, this court in *Nunnally* observed that the equitable distribution of property is accordingly often used in Texas as a substitute to compensate for the difference in earnings between husband and wife. The *Nunnally* court explained:

"Although there is no permanent alimony in Texas, *Francis*

9

*v. Francis*, 412 S.W.2d 29, 32 (Tex. 1967), the divorce court is authorized at the time of the divorce to divide the separate and community property between the spouses in whatever manner the court deems equitable and just. Tex. Family Code Ann. § 3.63. Factors which the Texas courts may take into account in making the division and award 'include the disparity of the *earning power* of the parties, as well as their business opportunities, . . . the physical condition of the parties, probable *future need for support,* and educational background; . . . [t]he fault in breaking up the marriage and the benefits innocent spouse would have received from a *continuation* of the marriage . . ..' *Cooper v. Cooper*, 513 S.W.2d 229, 233-234 (Tex.Civ.App.--Houston [1st Dist.] 1974, writ history unknown) (emphasis added). *See also Keton v. Clark*, 67 S.W.2d 437 (Tex.Civ.App.--Waco 1933, writ ref'd). Thus, it is clear support in the future can play a significant role in the divorce court's property division and that what may appear to be a mere division of assets may in fact, under a Texas decree, contain a substantial element of alimony-substitute, support or maintenance, however termed."

*Nunnally* at 1026-27 (emphasis added).

In *Matter of Benich*, 811 F.2d 943 (5th Cir. 1987), this court applied those very same criteria in determining that payments made by a man to his former wife under a Texas property settlement agreement were, despite the title of the agreement, in reality support and therefore could not be discharged in bankruptcy. In *Dennis* and *Joseph,* this court used the same list of factors enumerated in *Nunnally* and *Benich* in making this determination except the fault in breaking up the marriage, which is not mentioned in *Dennis* or *Joseph*. In effect, this court has applied the factors Texas courts use in determining what is an equitable division of property upon divorce to the question of what

10

constitutes alimony, support, or maintenance under section 523(a)(5).

Applying the *Nunnally* factors, including fault in breaking up the marriage, the bankruptcy court here concluded that the $65,000 promissory note payments were support under section 522(d)(10)(D). The bankruptcy court emphasized that Evert lacks a college degree or vocational training, had not worked outside the home since 1986, and has a monthly mortgage payment on the house she received of approximately $1,900. The record indicates that the couple's income while married was almost exclusively from Colvin's automobile business built during their marriage, with which Evert had helped out some. That business had produced between $6,000 and $8,000 of income per month. The lower courts cited these facts as illustrative of the difference in the parties' earning capacity, business opportunities, need for future support, and the benefits they would have received had the marriage continued.

The bankruptcy court, however, made one important clearly erroneous finding of historic fact. The court stated, "It is also instructive that under the Divorce Decree, although the payments under the Note are labelled as 'property settlement,' they are to last as long as the Alimony payments. Both payments cease on the earlier of five years or the Debtor's death." Milligan correctly asserts that this finding is clearly erroneous, as the Decree actually states that the note payments are to continue "until the

11

note is paid in full." Therefore, one of the factors that the bankruptcy court cited for construing the note obligation in question as alimony actually points toward classifying it as part of the property settlement.

Milligan also argues that the bankruptcy court applied the wrong law because the *Nunnally* factors used to define alimony, support, and maintenance in the discharge context are not applicable to the interpretation of the exemption under 11 U.S.C. § 522(d)(10)(D), especially when, as Milligan asserts in the case here, the parties' intent at the time of their agreement is clear and unambiguous. Milligan observes that the record in the case *sub judice* shows: 1) under one section of the decree Evert receives a monthly payment of $1,000 for child support, 2) another, separate section of the decree additionally provides for the note from Colvin to Evert, 3) under still another, separate section of the decree Evert additionally receives a monthly payment of $1,350 for alimony, 4) the payments under the note do not cease on the Debtor's remarriage or death, but the alimony payments expressly cease on Evert's death, 5) the note may be transferred or assigned by the Debtor while the alimony payments are expressly made non-assignable and non-transferrable, 6) the note is not subject to being modified upon any subsequent change of circumstances of the parties, and 7) the note closely equalized the division of the two major components of the parties' marital property. It is

12

undisputed that the note at issue was in the section of the agreement expressly dealing with the property division and that a wholly separate section was expressly devoted to alimony.

The threshold question is whether the same approach this circuit has used for determining what constitutes alimony in the context of dischargeability under 11 U.S.C. § 523(a)(5) should apply to exemptions under 11 U.S.C. § 522(d)(10)(D).  As we have not heretofore considered this question, the bankruptcy court relied on *In re Ellertson,* 252 Bankr. 831, 833 (Bankr. S.D. Fla. 2000) ("This Court believes that, for the purposes of both dischargeability and exemptions, a bankruptcy court may look behind a label applied by a state court to ascertain the true nature of an award"); *In re Sheffield*, 212 Bankr. 1019, 1020-21 (Bankr. M.D. Fla 1997) ("Logic dictates that what constitutes alimony for purposes of Section 523(a)(5), and what constitutes alimony for purposes of Section 522(d)(10)(D), should involve the same criteria"); and *In the Matter of Joseph,* 157 Bankr. 514, 518 (Bankr D. Conn. 1993) ("There is no readily apparent reason why a bankruptcy court should use different standards in reviewing alimony awards in the nondischargeability instance and in the exemption instance.  The overarching principle is that the primacy of the bankruptcy laws may not be subverted by labels placed on obligations by the parties themselves or by nonbankruptcy courts").

In *In re Harbaugh,* 257 Bankr. 485, 489 (E.D. Mich. 2001), the

court concluded that it "is unable to find any empirical basis upon which to reach a definite conclusion as to whether Congress intended for the alimony provisions of sections 522 and 523 to directly parallel one another."  The *Harbaugh* court concluded that section 522 exempts any payments from the bankruptcy estate that 1) are intended by the parties or the state court to support a spouse and 2) are, in the judgment of the bankruptcy court, reasonably necessary for such purpose.  *Harbaugh* at 491.  *Harbaugh* also held that the labels that the parties or nonbankruptcy courts place on an obligation are not dispositive and should not be allowed to subvert the bankruptcy laws.  The bankruptcy court here also relied on this circuit's holdings recognizing Texas' courts use of a liberal construction when interpreting state exemption statutes. *Matter of Walden,* 12 F.3d 445 (5th Cir. 1994); *Matter of Volpe,* 943 F.2d 1451 (5th Cir. 1991).  "A review of the legislative history of 11 U.S.C. § 522 . . . reveals no intention on the part of Congress to depart from the well-accepted general approach to construing exemption statutes liberally in favor of debtors."  *In re Coleman,* 5 Bankr. 76, 79 (Bankr. M.D. Tenn. 1980).

The bankruptcy court correctly observed that nearly all the courts that have considered the question have determined that the same interpretation given to 11 U.S.C. § 523(a)(5) should also be applied to 11 U.S.C. § 522(d)(10)(D).  We note, however, there are several arguments against this.

14

First, qualifying language that exists in 11 U.S.C. § 523(a)(5) is not found in 11 U.S.C. § 522(d)(10)(D). A phrase that is present in section 523(a)(5) but is absent from section 522(d)(10)(D) is "unless such liability is actually in the nature of alimony, maintenance, or support." The statutes may also differ somewhat in their underlying purpose. A liberal or broad interpretation of "alimony" may be particularly appropriate under section 523(a)(5) because of the desire to avoid harming someone who is completely innocent and depends on their former spouse for their support (and often for their children's support as well) *because* of the bankruptcy of that former spouse. Moreover, there is an incentive on the part of the debtor in the dischargeability context to try to characterize the obligation as something other than support so it can be discharged. In contrast, in the section 522(d)(10)(D) context, the person seeking the exemption is the individual who has taken bankruptcy so there is an arguable element of fault and there is no incentive to hurt an innocent third party, except perhaps the creditor. In the section 523(a)(5) context, the need to look beyond the labels may stem from the fact that the obligated party has an incentive to craft the agreement to disguise support as part of a property settlement so it is dischageable. However, in the exemption context of section 522(d)(10)(D), the incentive would be with the obligee party receiving what is actually a property settlement to disguise it as

15

support so it is sheltered in bankruptcy. We also note that in the section 523(a)(5) context the interests of the debtor and former spouse in the proceedings before the bankruptcy court are virtually always adverse, while in the section 522(d)(10)(D) context they are likely to be aligned against the third party creditor. Therefore, in the latter context it becomes more than normally questionable to rely on oral testimony of the spouse and former spouse as to their prior subjective intent with respect to the character of the indebtedness where that testimony runs counter to the clear purport of the relevant documents, which were likely all that would have been available to a third party extending credit.

We also observe that in 1994 Congress amended section 523, but without a parallel amendment to section 522, creating 11 U.S.C. § 523(a)(15), which precludes discharge of obligations:

> "(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—
>
> > (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in a business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
> > (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor."

16

The fact that Congress saw a need to add this provision to section 523 strongly suggests that the language in section 523 (a)(5) does not cover obligations incurred as part of a property division incident to divorce. The existence of this new provision suggests Congress envisioned that there would be other types of payments authorized in divorce agreements that would not qualify as alimony, maintenance, or support. That a parallel to this provision was not also appended to section 522 may also suggest a congressional intent *not* to have a scheme of exemptions as broad as the scheme of discharge disallowance in respect to obligations to former spouses arising in the divorce context.

We do not find it necessary to decide today whether the *Nunnally* factors that apply to section 523(a)(5) should also be applied to section 522(d)(10)(D), or indeed the weight to be assigned these factors given that Texas now has an alimony statute or, as is the case here, where the agreement being interpreted was reached through settlement, thereby making the state limitations on alimony largely irrelevant.[2] We hold only that, at least for purposes of section 522(d)(10)(D), where in the agreed divorce

---

[2]In 1997 Texas amended its statutes to for the first time provide for court ordered post-divorce spousal maintenance (in a relatively narrow range of circumstances) and also to provide for the first time for enforcement by contempt of contractual agreements between the divorcing spouses, approved by the divorce court, for post-divorce spousal maintenance payments. These provisions are now codified at §§ 8.051-8.059, Texas Family Code. A Texas divorce court may approve an agreement of the parties and incorporate it in the decree if it finds the agreement "just and right." Texas Family Code § 7.006(b).

decree there is 1) also a meaningful separate alimony provision, 2) the obligation in question is described as being part of the property division, 3) the label given to the obligation in question is matched by its actual characteristics, and 4) the evidence does not suggest the parties conspired to disguise the true nature of the obligation in order to subvert the bankruptcy or tax laws, there is no ambiguity necessitating the use of the *Nunnally* factors to essentially work backwards to determine the nature of the obligation. Because we conclude that that is the situation here, we reverse.

Under bankruptcy law, the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5). *See generally In re Davidson*, 947 F.2d 1294, 1296-97 (5th Cir. 1991); *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990). A written agreement between the parties is persuasive evidence of their intent. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986). Thus, if the agreement between the parties clearly shows that the parties intended the particular debt in question to reflect either support or a property settlement, then that characterization will normally control. *In re Yeates*, 807 F.2d 878 (10th Cir. 1986). On the other hand, if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence. *Id.* If an agreement fails to

provide explicitly for spousal support, a court may presume that a so-called "property settlement" is intended for support when the circumstances of the case indicate that the recipient spouse needs support. *Stout v. Prussel*, 691 F.2d 859, 861 (9 Cir. 1982); *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir. 1984) (J.M. Wisdom, J., sitting by designation).

*Yeates, Tilley, Stout, and Shaver* are instructive. Here, both the labels given to the obligation at issue in the agreement and the substantive characteristics of the obligation clearly reflect it is part of a property settlement. Furthermore, because there is an explicit, separate provision for nontrivial alimony in the agreement, there is no basis for judicially refashioning the note contained in the property settlement portion of the agreement as alimony. In *Yeates,* the court noted, "The agreement between the parties in the present case does not provide clear evidence of intent. Unlike the agreement in *Tilley*, it does not clearly segregate the property settlement provisions from the alimony provisions." *Yeates* at 878-79. This is indicative of the extent to which the existence of separate provisions is probative of the parties' intent at the time of the agreement.

In addition to the separate provisions for alimony and property division, there are several other substantive characteristics of the note that reinforce its designation as part of the property division. First, payments under the note do not

19

cease on the Debtor's death while the alimony payments do. One hallmark of a support obligation is that it terminates upon death. *In re Ferradino*, 14 Bankr. 196, 198 (Bankr. D.Nev. 1981); *In re Ingram*, 5 Bankr. 232, 235 (Bankr. N.D.Ga. 1980). It is obvious that a payment solely to provide maintenance and support would no longer be warranted after the death of the beneficiary. Also, while the alimony payments in the agreement are explicitly non-assignable and non-transferrable, there is no provision limiting the ability of Evert to dispose of the note (and it is hence assignable as a matter of law). In addition, the note is not subject to being modified upon any subsequent change of circumstances of the parties. One characteristic indicative of alimony is that it is normally subject to modification if the beneficiary no longer needs the support while one sign that an obligation is part of a property division is that it is not altered by a change in the circumstances of the beneficiary. *In re Benjamin*, 136 Bankr. 574, 578 (Bankr. S.D. Fla. 1992).

Finally, the note equalized the division of the two major components of the parties' marital property. The bankruptcy court found that the testimony indicated Colvin had equity in his business of $230,000 while there was approximately $100,000 equity in the home. Therefore, the note in the principal amount of $65,000 was exactly half of the $130,000 difference, thereby equalizing the property division. While there was some conflicting

20

evidence in the bankruptcy court on the value of the business, the bankruptcy court concluded the equity in it was $230,000 and Evert does not challenge that finding on appeal.  Similarly, the court in *Benjamin* cited evidence that a payment to a spouse was designed to offset the other spouse's interest in a business as being one factor indicating the payment was part of the property division rather than alimony.  *Benjamin* at 578.

The only characteristic of the note that would suggest it would be properly classified as alimony is that it provides payments over time, rather than one lump sum payment.  *Bowsman v. Morrell* (In re Bowsman), 128 Bankr. 485, 487 (Bankr. M.D. Fla. 1991).  However, this factor is not dispositive and, where there is evidence the obligation, bearing (as it does here) a realistic rate of interest, was spread out over time for legitimate reasons, such as for convenience, it tends to be a factor favoring classification of the obligation as part of the property settlement.  *In re Brackett*, 259 Bankr. 768, 775 (Bankr. M.D. Fla. 2001).  Here, Colvin's undisputed testimony  is that the reason for spreading out the payments in the form of the note instead of making a lump sum payment was convenience.  The testimony of the parties in this case as to their intent is not entirely conclusive, but it provides some reinforcement for the conclusion that the note was part of the property settlement.  Colvin testified that, from his perspective, the purpose of the note was to equalize the property distribution

21

because the house Evert received was worth significantly less than the business he kept. While Colvin also stated that he thought that Evert needed the payments on the note for her living expenses, this of itself is not meaningfully probative of his relevant intent at the time of the agreement. Under the clear language of section 522(d)(10)(D), the obligation must *first* be determined to be "alimony, support, or separate maintenance" and, *if* so, then it is exempt "to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." Therefore, Colvin's testimony and other evidence indicating Evert needs the payments on the note to pay her expenses has ultimate relevant only if the note constitutes "alimony, support, or separate maintenance."

Colvin's testimony that the intent of the note was to equalize the property division is particularly credible in light of his statement that he would prefer that Evert be able to exempt the note from the bankruptcy proceedings since she has custody of his child. It does not appear that Colvin had any motive to testify that the note was part of the property division when it was not.[3]

For her part, Evert testified that she only "skimmed" the agreed judgment. She stated that she knew that it provided for spousal support, child support, and contained this note, but did

---

[3]In addition, in order for alimony to be deductible by the payor under federal income tax laws, such payments must terminate upon the payee's death. 26 U.S.C. § 71. It did not serve Colvin's financial interest in terms of his federal tax burden to classify the note as part of the property division.

not attend to the characteristics of the note. Evert further testified that she did not have an attorney in the divorce and largely trusted and deferred to Colvin with regard to the terms of the agreement. In short, it appears Colvin's clear intent was that the note was, as the agreement states, to be part of the property division while Evert did not form an intent as to the note. Therefore, the testimony of the parties to the agreement partially supports the conclusion that the note was part of the property division and does not demonstrate either party had an intent contrary to the written agreement, which provides "persuasive evidence of intent," *Yeates* at 878, and "erected a substantial obstacle" for the party challenging its express terms to overcome, *Tilley* at 1078. There is no evidence that the parties sought to disguise the true nature of the note or other obligations in the agreement in order to subvert the bankruptcy laws or for any other reason. And there is no evidence that at the time of the divorce either party anticipated or considered the possibility of going into bankruptcy.

In sum, the bankruptcy court in this case made an error of law in prematurely resorting to the *Nunnally* factors. The *Nunnally* factors are, of course, binding law within this circuit at least as to 11 U.S.C. § 523(a)(5), but we have never applied them in a situation such as this where the written agreement and divorce decree in both form and substance clearly establish the nature of

23

the obligation and where there are distinct provisions for nontrivial alimony and for the property settlement. In contrast, *Nunnally* and its progeny have involved the interpretation of Texas divorce "just and right" divisions before the advent of alimony in Texas where, by necessity, all obligations ordered were grouped together as part of the property division.[4]

As this court has not had the opportunity prior to the case *sub judice* to consider a situation where the written agreement in both form and substance clearly establishes the nature of the obligation and where there are distinct provisions for nontrivial alimony and for the property division, we find that *Yeates, Tilley, Stout, and Shaver* are persuasive. In the present context, the approach of those cases provides guidance for divorce courts and parties entering into divorce agreements and avoids unnecessary subsequent subjective judicial determinations of extrinsic factors where the judgment and/or agreement is unambiguous. And, in such a context the approach we take minimizes the risk that what the parties and the divorce court unambiguously intended as a division of property may be recharacterized by the bankruptcy court as alimony merely because of its determination that in effect the parties and divorce court should have made or required provision for an amount of alimony greater than the nontrivial amount thereof

---

[4]Likewise, *Harbaugh* is inapposite because the court there relied on the fact that the obligation at issue was classified in the agreement as alimony and terminated upon death, neither of which is the case here.

24

specifically called for by the decree and the agreement of the parties.

The bankruptcy court cited this court's decisions in *Matter of Walden*, 12 F.3d 445 (5th Cir. 1994), and *Matter of Volpe,* 943 F.2d 1451 (5th Cir. 1991), recognizing that Texas state courts broadly construe bankruptcy exemptions to help the debtor and relied on *In re Coleman,* 5 Bankr. 76, 79 (Bankr. M.D. Tenn. 1980), for the proposition that "[a] review of the legislative history of 11 U.S.C. § 522 . . . reveals no intention on the part of Congress to depart from the well-accepted general approach to construing exemption statutes liberally in favor of debtors." However, *Walden* and *Volpe* are not controlling here because here it is the federal exemption that is at issue. We find it unnecessary to determine whether this circuit should also liberally construe 11 U.S.C. § 522(d)(10)(D) because, under any reasonable construction, the note at issue is properly classified as part of the property division. We think it plain that section 522(d)(10)(D) is not intended to embrace payments or transfers made simply to equalize the division of the spouses' existing property.[5] Where, as here, the unimpeached relevant documents unambiguously reflect that a particular payment is part of the division of the existing property

[5]This is also evidenced by § 523(a)(15) which reflects Congressional recognition that there *are* inter-spousal payment obligations arising out of but continuing after divorce which are *not* alimony, support or maintenance and which thus do not fall within § 523(a)(5), and, by implication, do not fall within § 522(d)(10)(D).

25

and that separate provision is made for nontrivial alimony payments, the former obligation may not be post-hoc recharacterized in bankruptcy as alimony or support under section 522(d)(10)(D) simply on the basis of a finding that the obligee spouse also had need of the former payments for support.

## Conclusion

For the foregoing reasons, the bankruptcy court's judgment that the note at issue constituted spousal support under 11 U.S.C. § 522(d)(10)(D), and the district court's affirmance of that judgment, are

REVERSED.