United States Court of Appeals
Fifth Circuit

**F I L E D**

June 20, 2006

Charles R. Fulbruge III
Clerk

In the

United States Court of Appeals

for the Fifth Circuit

———————

Nº 05-41854
Summary Calendar

———————

IN THE MATTER OF:
BRYAN L. LITTLETON, JR

Debtor.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

BRYAN L. LITTLETON, JR

Appellant,

VERSUS

DEBRA L. LITTLETON,

Appellee.

———————————————

Appeal from the United States District Court
for the Eastern District of Texas
Nº 4:04-CV-211

———————————————

Before SMITH, GARZA, and PRADO,
    Circuit Judges.

PER CURIAM:*

Bryan Littleton appeals the district court's ruling that a debt he owes his ex-wife, Debra Littleton, is in the nature of alimony, maintenance, or support, and accordingly is nondischargeable in bankruptcy proceedings under 11 U.S.C. § 523(a)(5). We affirm.

I.

The Littletons were divorced in March 2001 and negotiated a settlement agreement that was incorporated by the state court into its final decree of divorce. Under the heading of "Alimony," the agreement states that

> [i]t is the mutual desire of the parties to provide a continuing measure of support for Debra L. Littleton, Respondent, after the divorce. These payments undertaken by Petitioner, Bryan Littleton, are intended to qualify as contractual alimony as that term is defined in section 71(a) of the Internal Revenue Code of 1986 ("the code"), as amended . . . . All provisions of this article will be interpreted in a manner consistent with this intention.

The agreement goes on to specify that "Bryan Littleton will pay to Debra L. Littleton $1,100.00 per month as and for alimony." Beginning on March 1, 2001, and ending on February 1, 2011, payments under the agreement are to be made on the first day of every month. The obligation lapses immediately, however, if either party dies before the contractual termination date.

Bryan adhered to the terms of the agreement until July 2003, when he stopped making the required payments. In November 2003 he filed for chapter 7 bankruptcy, listing $167,439 he owed to Debra as a dischargeable general unsecured debt. Debra challenges that characterization, arguing that Bryan's indebtedness to her is in the nature of "alimony to, maintenance for, or support of" a former spouse and accordingly, pursuant to 11 U.S.C. § 523(a)(5), is nondischargeable.

Bryan counters that although the payments underlying the debt are labeled as alimony in the agreement, they are more accurately considered as part of the couple's property settlement. He bases this argument on the fact that under the terms of the agreement governing property division, Debra was to receive only $140,000 from a business of Bryan's that had an appraised value of $500,000. Bryan claims that Debra was entitled to half of the value of the business ($250,000) and that he agreed to categorize $110,000 of that amount as alimony, instead of as a portion of the property settlement, to get her to sign the agreement.[1]

After considering the terms of the settlement agreement and hearing the testimony of both Bryan and Debra, the bankruptcy court found that $101,200 of the debt Bryan owes Debra is in the nature of alimony, maintenance,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

---

[1] Bryan testified that "[Debra's] attorney wanted in the event that [the business] went broke or we didn't make it or something, you know, that there would still be a factor of $110,000" available to Debra. The alimony provision in the settlement agreement actually calls for Bryan to pay Debra $1,100 per month for ten years, a total of $132,000.

2

or support, and accordingly is nondischarge-able. The court found that the remaining $66,239 is a dischargeable general unsecured debt. The district court affirmed the bankruptcy court's findings, and Bryan appeals.

## II.

The district court's "[f]indings of fact are reviewed under the 'clearly erroneous' standard; conclusions of law are subject to *de novo* review." *In re Evert*, 342 F.3d 358, 363 (5th Cir. 2003).

## III.

Bryan contends that the district court erred in resting its findings exclusively on the language of the settlement agreement and by foregoing an evaluation of the factors articulated in *In re Nunnally*, 506 F.2d 1024 (5th Cir. 1994), as a means for determining whether a divorce-related obligation constitutes alimony, maintenance, or support, or is more appropriately considered as part of a property settlement.[2] He further asserts that "consideration of the *Nunnally* factors would show that Debra failed to introduce any evidence that the [relevant] payments were actually necessary for her support," and accordingly that the district court should have found that his monthly obligation under the settlement agreement could not be characterized as alimony.

We do not agree that consideration of the *Nunnally* factors is necessary in this case. We held in *Evert* that

---

[2] The *Nunnally* factors "include the disparity of the earning power of the parties, as well as their business opportunities, the physical condition of the parties, probable future need for support, . . . educational background, the fault in breaking up the marriage and the benefits [the] innocent spouse would have received from a continuation of the marriage." *Nunnally*, 506 F.2d at 1026-27.

[u]nder bankruptcy law, the intent of the parties at the time a separation agreement is executed determines whether a payment pursuant to the agreement is alimony, support or maintenance within the meaning of section 523(a)(5). *See generally In re Davidson*, 947 F.2d 1294, 1296-97 (5th Cir. 1991); *In re Gianakas*, 917 F.2d 759, 762 (3d Cir. 1990). A written agreement between the parties is persuasive evidence of their intent. *Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir. 1986). Thus, if the agreement between the parties clearly shows that the parties intended the particular debt in question to reflect either support or a property settlement, then that characterization will normally control. *In re Yeates*, 807 F.2d 874 (10th Cir. 1986). On the other hand, if the agreement is ambiguous, then the court must determine the parties' intentions by looking to extrinsic evidence. *Id*.

*Evert*, 342 F.3d at 368.

We found no ambiguity in the agreement at issue in *Evert*, and thus no need to consider extrinsic evidence such as the *Nunnally* factors, because "both the labels given to the obligation at issue in the agreement and the substantive characteristics of the obligation clearly reflect it is part of a property settlement." *Id*. The presence of an "explicit, separate provision for nontrivial alimony in the agreement" further established that "there is no basis for judicially refashioning the note contained in the property settlement portion of the agreement as alimony." *Id*. at 368-69.

Similarly, the settlement agreement in this case unambiguously categorizes the relevant payments as alimony and contains an explicit, separate provision for the division of property. As the district court asserted, the statements in

the agreement "demonstrate that both the label and the substantive characteristics of the payments underlying Bryan's $101,200.00 debt are indisputably in the nature of alimony as opposed to a property settlement . . . ." Accordingly, the district court did not err in deciding, without looking to extrinsic evidence, "that Bryan and Debra did in fact intend for the payments underlying the debt to operate as such."

AFFIRMED.