**In re William Leo WILBUR, III, Debtor.**

**Rosalie M. Martin, Plaintiff,**

v.

**William Leo Wilbur, III, Defendant.**

**Bankruptcy No. 97–18130–8G7.
Adversary No. 98–108.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 2, 2003.

William A. Borja, Esquire, Clearwater, FL, for Plaintiff.

Douglas N. Menchise, Esquire, Clearwater, FL, for Defendant/Debtor.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

PAUL M. GLENN, Chief Judge.

THIS ADVERSARY PROCEEDING came on for final evidentiary hearing on the Verified Complaint to Determine Dischargeability of Debt and Objection to Discharge of Debtor filed on February 27, 1998, by Rosalie M. Martin (the Plaintiff, or Ms. Martin), the former wife of William Leo Wilbur, III (the Defendant or the Debtor). The Debtor filed Defendant's Answer to Count I of the Verified Complaint to Determine Dischargeability of Debt and Objection to Discharge of Debtor; Defenses and Counterclaim on March 27, 1998. The Plaintiff filed Plaintiff's Answer to Counterclaim and Affirmative Defense on May 12, 1998. The Debtor also filed Defendant's Motion to Dismiss Counts II through VI, as well as a Motion to Strike All Claims for Attorney's Fees on March 27, 1998. Following a hearing on these two motions, an order was entered granting Defendant's Motion to Strike All Claims for Attorney's Fees on May 29, 1998. In addition, an order was entered on May 29, 1998 denying Defendant's Motion to Dismiss Counts II through VI of the Verified Complaint. The Defendant's Answer to Counts II through VI and Defenses were filed on June 17, 1998.

### Background

The Debtor filed his Chapter 7 bankruptcy petition on November 3, 1997. On Schedule F, Creditors Holding Unsecured Nonpriority Claims, he listed Rosalie M.

Martin with a Property Settlement Agreement in the amount of $50,000.00. The Debtor's Section 341 Meeting of Creditors was first set and concluded on December 4, 1997. On February 2, 1998, Ms. Martin's counsel filed a Motion for Extension of Time to File Objection to Discharge of the Debtor. On February 9, 1998, the Court entered an order granting Ms. Martin "twenty (20) days from the date of this order to file her Objection to the Discharge of the Debtor..."

The final evidentiary hearing in this adversary proceeding encompassed four days of testimony by both the Debtor and the Plaintiff, as well as their respective witnesses. Counsel for both parties introduced several notebooks of exhibits into evidence. (See Transcript of Final Evidentiary Hearing, Volume I, page 6, August 2, 2002)(The hearing took place at various dates over a several month period; the transcript for all dates is hereinafter referred to as "Transcript" and the reference shall include the volume and page numbers as well as the date.)

From the evidence presented the Court determines the following:

1. Ms. Martin and the Debtor were married from 1984 to 1996, with the Final Judgment of Dissolution of Marriage entered in the Circuit Court for Pinellas County, Florida, on February 21, 1996.

2. The Debtor was the sole shareholder of an office supply/copier service business named Empire Office Equipment, Inc. The business was started shortly after the Debtor and Ms. Martin were married. The Debtor provided the technical expertise and supervision of other technicians that the business employed from time to time. Ms. Martin worked there from January, 1992, to February, 1995, as an office assistant.

3. At the time of her marriage to the Debtor, Ms. Martin owned a four bedroom house in Seminole, Florida. Ms. Martin was awarded the home as part of a settlement in the divorce proceedings from her first marriage, and at that time the mortgage on the home was approximately $45,000.

4. During their marriage the Debtor and Ms. Martin refinanced the Seminole house twice, using the proceeds from the refinancing of the equity in the home for an operation for Ms. Martin and for capital for the Empire Office Equipment business.

5. In connection with the final divorce decree, the parties executed a Mediated Marital Settlement Agreement on December 4, 1995. In the agreement Ms. Martin agreed to quit-claim her interest in commercial property in Largo, Florida (where Empire Office Equipment conducted its business at that time) and the Debtor agreed to quit-claim his interest in the marital residence (which was the property originally obtained by Ms. Martin as a result of the divorce proceedings involving her first marriage). The responsibilities for the marital debts and the ownership of the two automobiles was specified in the agreement. With regard to spousal support, the agreement contained a specific waiver of alimony on the part of both parties. Empire Office Equipment, Inc. was also a party to the agreement, and obligations involving Empire Office Equipment are set forth below:

C. Empire Office Equipment, Inc.: The Husband shall retain sole ownership of his business, Empire Office Equipment, Inc. and shall assume responsibility for all liabilities associated with the business except as otherwise provided herein. The Husband's solely owned business, Empire Office Equipment, Inc., *personally guaranteed by the Husband individually,* shall pay to the Wife

in consideration of her assumption of loans associated with the business a lump sum payment of $69,000 payable as follows: Beginning January 1, 1996, and continuing on the first day of each month for the next consecutive 59 months, the business shall pay to the wife $1,150 per month. Because the parties acknowledge that these payments shall effectuate the equitable distribution of the parties' assets and liabilities *but are incidentally necessary to the support of the Wife, these payments shall be non-dischargeable in bankruptcy and shall be specifically enforceable by contempt.* As further security of the repayment of this loan to the Wife, the Husband shall maintain a life insurance policy of at least $69,000 naming the Wife as a beneficiary for so long as he has this obligation. Additionally, the Husband shall, if acceptable to his health insurance carrier, provide health insurance coverage to the Wife as presently maintained with the Wife assuming responsibility for payment of the monthly premium.

(Emphasis supplied).

## Discussion

The Plaintiff's complaint specifies six separate counts. Count I relies on 11 U.S.C. § 523(a)(5) for the determination that the above-described obligation of the Debtor as guarantor of the obligation of Empire Office Equipment is nondischargeable spousal support to the Plaintiff. Count II requests relief under 11 U.S.C. § 523(a)(15) if the Debtor's obligation to the Plaintiff specified in Count I is not determined to be in the nature of alimony, maintenance, or support. Counts III through VI recite various grounds and include provisions of 11 U.S.C. § 727(a) to deny the Debtor a discharge.

## I. Dischargeability of the Debt Owed to the Plaintiff

Section 523 (a)(5) of the Bankruptcy Code provides as follows:

11 U.S.C. § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that–
>
> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the federal Government or to a State or any political subdivision of such State); or
>
> (B) such debt includes a liability designated as alimony, maintenance, or support unless such liability is actually in the nature of alimony, maintenance, or support;

This section provides that a debt or obligation to a former spouse for "alimony to, maintenance for, or support of such spouse" is not dischargeable in bankruptcy if it is actually in the nature of alimony, maintenance, or support. The bankruptcy court is not bound by the language or the labels of the obligations as specified in the marriage dissolution documentation of the state court. The bankruptcy court should consider the substance

of the agreement or order that created the obligation to determine whether such obligation actually constitutes alimony, maintenance or support. *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001), *citing In re Harrell*, 754 F.2d 902, 904 (11th Cir.1985). This requires the Court to look beyond any label used by the parties in the divorce agreement, settlement agreement, or order. *Campbell v. Campbell (In re Campbell)*, 74 B.R. 805, 809 (Bankr.M.D.Fla.1987). The determination should be based on "a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the *nature* of support." *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir.2001), *citing In re Harrell*, 754 F.2d 902, 906 (11th Cir.1985). There are two main considerations in such analysis: the intent of the parties or the state court in creating the obligation and the purpose of the obligation in light of the parties' circumstances, particularly financial circumstances, *at that time.* See *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 725–726 (10th Cir.1993).

In view of these considerations, the Court determines that the monthly payments of $1,150 designated in the Mediated Marital Settlement Agreement were in the nature of spousal support to the Plaintiff. In making this determination, the Court looks beyond the language of the Mediated Marital Settlement Agreement relating to "equitable distribution," "loans related to the business," "incidentally necessary to the support of the Wife," and "non-dischargeable in bankruptcy" in order to focus on the issues of (1) the actual intent of the parties when creating this obligation, and (2) the purpose of the obli-

gation based on the parties' financial circumstances *at that time.*[1]

The Mediated Marital Settlement Agreement contains a provision that the Debtor's obligation to Plaintiff was for the support of the Plaintiff and was intended by the parties to be nondischargeable in bankruptcy. The provision is more than a label-it is a specific statement regarding the purpose of the obligation and the intent of the parties. This is certainly a factor to consider when assessing the purpose of the obligation and the intent of the parties. However, such a provision regarding dischargeability made in advance of the filing of a bankruptcy petition has been held to be unenforceable as in conflict with the purpose and policies of the bankruptcy process. See *Engram v. MacDonald (In re MacDonald)*, 194 B.R. 283, 287 (Bankr.N.D.Ga.1996) and the cases cited therein. Accordingly, the Court looks to other factors as well as this provision to evaluate the nature of the obligation.

The Mediated Marital Settlement Agreement also provides that the obligation is enforceable by contempt. Generally, in Florida, alimony and support payments are enforceable by the contempt powers of the court, but property settlements are not.

If an obligation is in the nature of settlement of property rights as opposed to alimony, support, or maintenance of one to whom the duty is owed, the contempt power of the court cannot be invoked. The obligation to make periodic payments pursuant to a property settlement agreement cannot be enforced by contempt proceedings, because in such

---

1. Because of the inclusion of Count II in the complaint, there was substantial testimony as to the Debtor's financial condition subsequent to the execution of the Mediated Marital Settlement Agreement. However, for purposes of determining whether the amounts due the Plaintiff were in the nature of spousal support pursuant to § 523(a)(5), the relevant questions with regard to finances concern the situation at the time of the divorce.

cases the parties stand as debtor and creditor.....

Agreements requiring lump-sum alimony payments, including the award of the marital home and mortgage payments, are essentially for support purposes and are therefore enforceable by contempt. However, contempt is unavailable to enforce an award of lump-sum alimony that is made for the purposes of property division. Neither will the court enforce by contempt a requirement that a spouse make mortgage payments that is in the nature of a property settlement.

26 Fla. Jur.2d, Family Law § 1200. The provision in the Mediated Marital Settlement Agreement that the obligation is enforceable by contempt also indicates that the parties recognized that the payments were in the nature of support.

■ The agreement also provides that the obligation is an obligation to Ms. Martin "in consideration of her assumption of loans associated with the business." This statement is characteristic of a property settlement. However, "[i]rrespective of how it is labelled, a court may presume that a so-called property settlement is intended for support when the circumstances of the case indicate that the recipient spouse needs support." *In re Sandoval*, 161 B.R. 796, 799 (Bankr.N.D.Ohio 1992). As with the provision that the debt is nondischargeable, this provision of the Mediated Marital Settlement Agreement is also a factor to be considered by the Court when weighing all the evidence and testimony to determine if the payments to the Plaintiff were actually intended to provide support.

A recent case decided by the Fifth Circuit Court of Appeals, *In re Evert*, 342 F.3d 358 (5th Cir.2003), although very different from the case at bar, is instructive in its analysis. *Evert* involved a promissory note owed to the debtor by her ex-husband that the debtor claimed as exempt alimony or support pursuant to 11 U.S.C. § 522(d)(10)(D), and that the Chapter 13 Trustee objected to as a property settlement. In reversing the two lower courts, the Fifth Circuit Court of Appeals determined that for exemption purposes, the language of the written agreement between the debtor and former spouse is persuasive evidence of their intent. The Court of Appeals in *Evert* noted that property settlements are generally lump sum amounts, and if payable over time, do not terminate upon the death of the ex-spouse or a change in the beneficiary's circumstances. It is true that in Ms. Martin's situation, the payments to her do not terminate upon any change in her circumstances; the "lump sum" of $69,000 is payable monthly, without interest, in increments of $1,150.[2] However, in *Evert*, the Court noted that there was an additional "...explicit, separate provision for nontrivial alimony in the agreement..." (*Evert* at 368), which is not the situation in the Mediated Marital Settlement Agreement entered into by the Debtor and Ms. Martin. Despite the low wage that Ms. Martin made at the time of the divorce, there are no other provisions for alimony or support for her in the Mediated Marital Settlement Agreement.

While the provisions of the Mediated Marital Settlement Agreement indicate that the obligation was intended to be a support obligation, various sentences in

---

**2.** It should be noted, however, that bankruptcy courts do not generally look upon an obligation's "lump sum" designation as dispositive with respect to a dischargeability de-

termination. See *In re Cooper*, 263 B.R. 164, 166 (Bankr.D.Conn.2001) and the cases cited therein.

the same paragraph describing the monthly obligation have conflicting probative value as to whether the obligation should be considered spousal support or property settlement. The Court of Appeals reiterates clearly in *Evert* the well established principle that for the purpose of dischargeability, bankruptcy courts should look beyond labels which state courts, and the parties themselves, give obligations which debtors seek to have discharged. *Id.* at 364.

The evidence from the hearing indicates that, at the time of the divorce, Ms. Martin could not have supported herself in her home without the payments from the Debtor or his business, and at that time the Debtor and his business were able to provide the support. At the time of the divorce and the negotiation of the Mediated Marital Settlement Agreement, which was signed by the parties in December, 1995, and incorporated in the final dissolution order in February, 1996, the financial circumstances of the Plaintiff and the Debtor may be summarized as follows:

1. Ms. Martin had worked as an office assistant for Empire Office Equipment, Inc. for several years prior to looking for new employment as a consequence of the break-up of her marriage to the Debtor. She worked several temporary clerk jobs from February, 1995, to July, 1997, at which time she started working as a clerk for the Sheriff's Department of Pinellas County, making $7 an hour. (Transcript, Volume I, pp. 53–55, August 2, 2002).

2. Ms. Martin's most important asset was the marital residence, which she had brought into the marriage with the Debtor. A significant portion of the equity had been taken out of the home with two refinancings of the property during the marriage with the Debtor. The testimony at the final evidentiary hearing was that approximately $8,000 of those proceeds were spent on an operation for Ms. Martin and the rest of the proceeds went to finance the business, Empire Office Equipment, Inc.

3. When the Debtor stopped paying Ms. Martin the $1,150 monthly obligation in July, 1997, Ms. Martin had to borrow money from her parents in order to make the mortgage payments on her home, until she sold it in July, 1998, as a distressed sale.

4. At the time of the execution of the settlement agreement in December, 1995, the Debtor owned Empire Office Equipment, Inc., and the business operated from a commercial property he owned individually in Largo, Florida. When Judith Butterfield, a nurse, moved into his condominium with him in January, 1997, he paid for a Chevrolet Monte Carlo for her use through his business. (Transcript, Volume II, page 154, August 2, 2002). In addition, at the time Ms. Butterfield moved into the Debtor's condominium, the agreement with the Debtor was that she wasn't to "pay anything." (However, as the months went by he asked her to pay more bills and bill collectors started to telephone the condominium.) (Transcript, Vol.II, pp. 168–9, 176, August 2, 2002).

5. It was also apparent from the testimony at the hearing that the Debtor paid personal obligations from his small business. It appears that establishing the monthly payments as an obligation of Empire Office Equipment, Inc., guaranteed by the Debtor, was to shift this personal obligation to a business expense, and is not determinative of whether such payments were actually property settlement rather than support.

According to the Debtor's testimony at the hearing, an incident occurred at the Debtor's business in November, 1996, where two employees took parts and copi-

ers, incurred charges on the business credit cards, and took money due Empire Office Equipment, Inc. The Debtor did not prosecute these employees and the Debtor did not have insurance to cover the loss; Empire Office Equipment, Inc. apparently absorbed this loss.

Testimony at the hearing indicated that the Debtor's financial problems began to intensify in the latter half of 1997. July 31, 1997, was the last payment he made to Ms. Martin. According to the Debtor's Statement of Financial Affairs, an automobile was given back to Amsouth Bank on October 8, 1997. The commercial building in Largo, Florida, was disposed of in October, 1997, for the amount of the mortgage owed to Pinellas Community Bank and a lis pendens filed by Ms. Martin resulting in a payment to her of $1253. The Debtor filed the bankruptcy petition on November 3, 1997. Empire Office Equipment, Inc. did not file a bankruptcy petition, but simply went out of business, and the Debtor started a new business, also an office supply and copier business, through a new corporation named Bill's Office Systems, Inc.

Although there is evidence of the Debtor's financial difficulties since 1997, there was no indication that the monthly payments to Ms. Martin were a financial problem for the Debtor or his business at the time of the execution of the Mediated Marital Settlement Agreement in December, 1995.

Considering all of the evidence, it is apparent that the monthly payment obligation to Ms. Martin was to enable her to keep her home, which she could not have accomplished on the clerk's salary she was making at the time.

The Plaintiff has determined that the balance due pursuant to the obligation is $48,366.80. (Transcript, Volume V, page 74, June 24, 2003). The Debtor did not introduce any evidence at the hearing disputing such balance. Therefore, the Court determines that the balance due the Plaintiff under the Mediated Marital Settlement Agreement is $48,366.80. Since the Debtor has not made a payment since July, 1997, all amounts due and owing are in arrears (at the monthly rate of $1,150) and therefore are due and payable in full at this time. The Mediated Marital Settlement Agreement also states that the Debtor is to maintain a life insurance policy naming Ms. Martin as beneficiary in an amount of at least $69,000. The Court also determines that such obligation is nondischargeable support pursuant to § 523(a)(5). (Obligations such as the requirement to maintain life insurance may be determined as a nondischargeable support obligation pursuant to § 523(a)(5). See *In re Merrill*, 246 B.R. 906, 916 (Bankr.N.D.Okla.2000).)

■ The Court notes that the Debtor testified that he is currently in poor health without the ability to continue his copier repair business. However, a "post-divorce downturn in the debtor's finances" does not impact the bankruptcy court's analysis pursuant to § 523(a)(5). *Robinson v. Robinson (In re Robinson)*, 193 B.R. 367, 372, n. 1 (Bankr.N.D.Ga.1996), citing *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 906–7 (11th Cir.1985). Any modification of the support obligation required in the Mediated Marital Settlement Agreement and incorporated in the final judgment of dissolution of marriage is a matter for the state courts. See *Harrell v. Sharp (In re Harrell)*, 754 F.2d 902, 907, n. 7 (11th Cir. 1985).

Therefore, the Court determines that the amounts due and owing the Plaintiff constitute support obligations of the Debtor and as such are excepted from his discharge pursuant to 11 U.S.C. § 523(a)(5).

Since the obligations owed to the Plaintiff by the Debtor constitute nondischargeable support obligations pursuant to 11 U.S.C. § 523(a)(5), no analysis with regard to Count II of the Plaintiff's complaint based on § 523(a)(15) of the Bankruptcy Code is necessary.

## II. Denial of the Debtor's Discharge

▮▮▮▮ Counts III, IV, V, and VI of the Plaintiff's Verified Complaint assert various grounds and provisions of § 727(a) of the Bankruptcy Code as bases to deny the Debtor's discharge. The Plaintiff has the initial burden of proving the objection to discharge. Fed. R. Bankr.P. 4005. The objection must be proven by a preponderance of the evidence, and the provisions of the Bankruptcy Code relating to the debtor's discharge should be construed in favor of the debtor and strictly against the one who challenges the debtor's right to the discharge. See *In re Vina*, 283 B.R. 803, 807 (Bankr.M.D.Fla.2002) and the cases cited therein.

The Counts of the Complaint related to the denial of the Debtor's discharge (including the factual allegations in support thereof) are as follows:

1. Count III—pursuant to § 727(a)(2)(A)

 17. Debtor at the 341 Meeting on December 4, 1997 testified that he had inventories stolen and that his bookkeeper had stolen his Blazer automobile and credit cards, etc. and that there was a warrant with the Largo police department.

 18. Debtor also testified that he had transferred or was transferring his business, Empire Office Equipment, Inc. to another entity, Bill's Office System's, Inc. Numerous items of inventory, manuals and merchandise, equipment were owned by the Defendant and/or his business. None of these items were listed on his Schedule B or elsewhere.

2. Count IV—pursuant to § 727(a)(3)

 22. Debtor, at the 341 Meeting herein, represented or implied that he had filed a report with the Largo police department concerning the alleged theft of his business inventory and assets.

 23. Defendant was requested by the Largo police department to provide them with a list of items stolen, but failed or refused to comply with the request and the report by the Defendant was closed. Upon information and belief, Defendant has failed to maintain records reflecting the assets, inventory of his business or to whom the property was sold or transferred, amounts received therefore or any records concerning inventory purchased or remaining on hand.

 24. That upon information and belief, said property either bought, held or sold by Debtor was substantial.

3. Count V—pursuant to § 727(a)(4)(A)

 28. Debtor failed to include on said Statement and Schedules his interest in the following personal property:

 A. Numerous items of inventory, equipment, manuals and other personal property owned by Debtor in his office copier repair business(es).

 B. His interest, as well as inventory, equipment, manuals in certain other business entities in which he owned all or substantial portions of said businesses.

 C. His interest in any insurance proceeds resulting from an alleged loss of personal property owned by the Debtor.

 D. His shares and interests in a Florida corporation, Bill's Office System's, Inc.

E. His furniture, furnishings, collectibles and other personal property.

29. Debtor failed to include on said Statement and Schedules all withdrawals or distributions given to him, including compensation in any form during one year immediately preceding commencement of this case.

30. Debtor failed to include on said Statement and schedules who had possession or control of the inventory Debtor took [sic] of his business.

31. Debtor failed to include on said Statement and schedules the name and address of a corporation in which the Debtor was an officer, director, partner or managing executive of the corporation, Bill's Office System's, Inc. and the custodians, bookkeepers and accountant of those corporate records.

Count VI—pursuant to § 727(a)(2)(B)

33. Debtor either knowingly, willfully and fraudulently conveyed material interests in non-exempt property to various other persons or entities subsequent to filing bankruptcy in an attempt to defraud, hinder, or delay their creditors, or in the alternative, knowingly, willfully and fraudulently concealed their material ownership interest in assets from their creditors.

34. Debtor either knowingly, willfully and fraudulently failed to disclose income received, personal bank accounts, prior residential address and ownership and officer status in a corporations [sic] which held assets.

 It appears that the Plaintiff has attempted to fit suspicions she had regarding the viability of the Debtor's business, Empire Office Equipment, Inc., into grounds for the denial of the Debtor's discharge. The allegations the Plaintiff made in the complaint and at the hearing relate to the once thriving business of Empire Office Equipment, Inc., and raise questions regarding the disposition of the assets of the business. However, "[a]llegations of improprieties conducted by a debtor must be substantiated through both credible and persuasive evidence, as opposed to conjecture and speculative charges." *In re Feldman,* 242 B.R. 88, 91 (Bankr.S.D.Fla.1999). As described above, it appears that the Debtor did in fact have a substantial financial downturn in the latter part of 1997. However, the Plaintiff acknowledged that the last time she had actually been in Empire's offices to see the business was in early 1996, (Transcript, Volume V, page 95, June 24, 2003), and acknowledged that she has no direct knowledge with regard to the disposition of the inventory and assets of the business. (Transcript, Volume I, page 80, August 2, 2002).

The only specific items that the Plaintiff mentioned in the final evidentiary hearing as having been omitted from the Debtor's schedules were golf trophies. The omission of these golf trophies from the schedules is a *de minimis* omission. Other evidence, such as the testimony of Edward LeBrecque, C.P.A., was directed to the issue of the valuation of Empire Office Equipment, Inc. at the time of the petition. However, Bill Newton, a friend of the Debtor's and former partner in Empire Office Equipment, Inc., testified that when he helped the Debtor empty out the commercial property in Largo prior to the pending foreclosure, there was "no value" to the inventory or assets of the business, and that many of the items were removed as junk without compensation to the Debtor. (Transcript, Volume V, pages 49–50, June 24, 2003). Additionally, the Debtor disclosed his ownership of the stock of Empire Office Equipment, Inc. as an exempt asset, and no objections to the Debt-

or's claim of exemptions were filed in the bankruptcy case.

After reviewing the testimony and evidence provided by the Plaintiff relating to the allegations seeking denial of the Debtor's discharge, the Court determines that the Plaintiff did not meet the burden of proof required for such denial under any of the provisions of § 727(a) of the Bankruptcy Code. Accordingly, with regard to Counts III through VI of the Verified Complaint, the Court determines that the Debtor's discharge should not be denied.

### Conclusion

The Plaintiff asserts that the obligations of the Debtor pursuant to the Mediated Marital Settlement Agreement are nondischargeable pursuant to §§ 523(a)(5) or (a)(15) of the Bankruptcy Code. The Court determines that the obligations were support to the Plaintiff and thus were nondischargeable pursuant to § 523(a)(5). Accordingly, the obligations of the Debtor to the Plaintiff in connection with the dissolution of marriage are excepted from his discharge in the Debtor's Chapter 7 case.

The Debtor shall receive his discharge pursuant to § 727 of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that:

1. The debt owed to the Plaintiff, Rosalie M. Martin, in the amount of $48,366.80 is excepted from the Debtor's discharge pursuant to § 523(a)(5) of the Bankruptcy Code.

2. The Debtor shall receive his discharge pursuant to § 727 of the Bankruptcy Code.

3. A separate Final Judgment shall be entered consistent with this Opinion.