GREENLEE, J., FOR THE COURT:
¶ 1. After finding that Tammy English was in contempt for failing to pay Richard Davenport lump-sum alimony, the Warren County Chancery Court ordered her to satisfy the arrearage in installments. The chancellor held that English would be incarcerated if she failed to do so. English appeals and claims the chancellor erred by (1) finding her in willful and contumacious contempt of her alimony obligation; and (2) ordering that she would be incarcerated. But it was within the chancellor's discretion to find that English failed to prove that she was unable to satisfy her lump-sum alimony obligation. And English's inability to pay as a defense to incarceration is not properly before us. Thus, we affirm the chancellor's judgment.
FACTS AND PROCEDURAL HISTORY
¶ 2. Incident to their 2012 divorce, English was ordered to pay Davenport approximately $8,400 per month in lump-sum alimony for 180 months.[1] Davenport v. Davenport , 156 So.3d 231, 235 (¶ 11) (Miss. 2014). The award was intended to avoid dividing a number of companies that the former couple owned, including Good Samaritan Physical Therapy, Inc.
*360 Id. at (¶ 10). English appealed, and the Mississippi Supreme Court retained the case.
¶ 3. Meanwhile, English and Davenport were in practically constant litigation related to English's lump-sum alimony obligation. English was held in contempt after she failed to make the September through November 2012 alimony payments, among other things.[2] She apparently satisfied that contempt judgment, but she was later found in contempt again after she did not pay alimony from December 2012 through March 2013. She satisfied that judgment after she sold her home to her father.
¶ 4. Next, English failed to pay alimony from September through December 2013. English sold her lake house and became current through January 2014. However, she did not pay any alimony from January to May 2014. On May 13, 2014, the chancellor entered a judgment in Davenport's favor for more than $42,000. The chancellor held that English would be incarcerated if she did not become current on her alimony by May 30, 2014.
¶ 5. In November 2014, the supreme court affirmed the chancellor's divorce judgment. Id. at 241 (¶ 36). The supreme court also upheld the chancellor's valuation of the business, the equitable distribution of the marital property, and the lump-sum alimony award. Id. The supreme court found no merit to English's claim that she was unable to pay approximately $8,400 per month in lump-sum alimony. Id. at (¶ 35).
¶ 6. In March 2015, Davenport filed another contempt petition. At that time, English had not satisfied the previous contempt judgment, and she had failed to pay alimony from June 2014 through February 2015. English responded with an emergency motion to stay an arrest warrant and to modify her alimony obligation. She claimed she was unable to make the lump-sum alimony payments, so she should not be held in contempt. After hearing evidence over the course of three days, the chancellor found no merit to English's request to modify her alimony obligation. The chancellor also found that English was again in contempt. Consequently, the chancellor awarded Davenport a judgment for approximately $114,000. The chancellor held that English had to pay Davenport $50,000 by March 1, 2016.[3] She then had to pay him another $50,000 on June 1, 2016. The remaining balance was due on August 1, 2016. The chancellor held that English would be incarcerated if she failed to make any of the payments. English also had to continue making alimony payments as they became due. After filing an unsuccessful motion for reconsideration, English appeals.[4]
*361 STANDARD OF REVIEW
¶ 7. In general, a chancellor has substantial discretion in deciding whether a party is in contempt. The chancellor, who sits in the unique position to observe the parties and their demeanor, the evidence, and the testimony, is infinitely more competent to decide contempt matters than we are. Because contempt is an issue of fact to be decided on a case-by-case basis, these matters are committed to the substantial discretion of the trial court. Therefore, [an appellate court] will not reverse a chancellor's finding where it is supported by substantial credible evidence.
Gutierrez v. Gutierrez , 233 So.3d 797, 815 (¶ 46) (Miss. 2017) (citations and internal quotation marks omitted).
DISCUSSION
I. Inability to Pay as a Contempt Defense
¶ 8. English does not dispute that Davenport adequately proved that she was in contempt. Instead, she argues that the chancellor should have found that she was unable to satisfy her alimony obligation. A defendant can rebut a prima facie contempt case related to nonpayment of alimony by proving her inability to pay. Doyle v. Doyle , 55 So.3d 1097, 1111 (¶ 46) (Miss. Ct. App. 2010). One must do so by a preponderance of the evidence and "with particularity, not just in general terms." Gutierrez , 233 So.3d at 815 (¶ 47) ; Stribling v. Stribling , 960 So.2d 556, 560 (¶ 9) (Miss. Ct. App. 2007). Thus, a defendant must prove "that [she] earned all [she] could, that [she] lived economically, and paid all surplus money above a living on the alimony decreed to [her husband]." Lane v. Lane , 850 So.2d 122, 126 (¶ 12) (Miss. Ct. App. 2002). "[T]he payment of other debts or expenses will not excuse or justify [her] default, unless such payment was necessary in order to continue [her] business or occupation, because [her husband's] right to alimony is a prior and paramount claim on [her] earnings." Id.
¶ 9. A significant portion of the contempt hearing was devoted to scrutinizing English's financial declarations and records. According to English, her net monthly income was approximately $11,600. She claimed her monthly expenses were around $10,800. That figure did not include her alimony obligation, but it also does not account for the fact that Good Samaritan reimbursed English or outright paid for many of her expenses. The chancellor could have reasonably found that English's expenses were not "necessary ... to continue [her] business" and she had not been living as economically as possible. See id. The chancellor also noted that English did not have exclusive access to her accounts. Without detailing every minute expenditure, it was within the chancellor's discretion to find that English spent lavishly on meals and several trips over the course of a year. It was not unreasonable for the chancellor to find that English's expenses were "out of control." The chancellor concluded that English "ha[d] continued to live as she always ha[d,]" "no one appear[ed] to be on any sort of budget[,]" and everyone[5] "just spen[t] at will."
*362 ¶ 10. As mentioned above, "[a] chancellor has substantial discretion in deciding contempt matters because of the chancellor's temporal and visual proximity to the litigants." Crittenden v. Crittenden , 129 So.3d 947, 953 (¶ 18) (Miss. Ct. App. 2013) (quoting Gilliland v. Gilliland , 984 So.2d 364, 369 (¶ 19) (Miss. Ct. App. 2008) ). There was substantial credible evidence to support the chancellor's decision that English had not been living as economically as possible and contributing everything she could toward her alimony obligation. As such, we will not reverse the chancellor's judgment.
II. Inability to Pay as a Defense to Incarceration
¶ 11. On January 21, 2016, the chancellor entered her "order of contempt" and held that English must surrender herself for incarceration if she did not pay Davenport $50,000 by March 1, 2016. The chancellor entered the "final judgment on petition for contempt" after English failed to make that payment. Although there is apparently a warrant for English's arrest, the record does not indicate that English is in custody. Be that as it may, English claims that the chancellor should not incarcerate her because she cannot pay Davenport $50,000. English also claims that her incarceration would violate Article 3, Section 30 of the Mississippi Constitution, which provides that "[t]here shall be no imprisonment for debt."[6] But our supreme court has held that the "constitutional prohibition against imprisonment for debt does not prevent a commitment to prison for nonpayment of alimony." Felder , 195 Miss. at 338, 13 So.2d at 827.
¶ 12. "Inability to pay to avoid incarceration is a continuing defense as imprisonment does not accomplish the purpose of the civil contempt decree." Vassar v. Vassar , 228 So.3d 367, 380 (¶ 48) (Miss. Ct. App. 2017) (quoting Riser v. Peterson , 566 So.2d 210, 211 (Miss. 1990) ). "[A] litigant may be incarcerated for civil contempt for failure to pay a judgment but that litigant is always entitled to offer evidence of inability to pay as a defense, *363 not to the contempt, but to the incarceration." Id. Moreover:
the court's power to commit [someone] to jail until he complies with the decree requiring him to make monthly payments for support and maintenance depends on his then present ability to comply with the decree, and that, in determining such ability, the amount of past earnings and how they have been expended is not controlling .
Lewis v. Lewis , 213 Miss. 434, 438, 57 So.2d 163, 165 (1952) (emphasis added). So even if the contemnor's inability to pay "is due to misconduct, imprisonment cannot accomplish the purpose of the civil contempt decree, which is to compel obedience." Howard v. Howard , 913 So.2d 1030, 1039 (¶ 20) (Miss. Ct. App. 2005) (quoting Jones v. Hargrove , 516 So.2d 1354, 1358 (Miss. 1987) ).
¶ 13. Notwithstanding the foregoing, "the right to imprison [someone] until he has paid the total sum now in arrears would depend upon his ability to do so at the time he was ordered to pay the [arrearage] in order to purge himself of contempt." Lewis , 213 Miss. at 438, 57 So.2d at 165. Said differently, "[t]he trial court's power to commit [English] to jail until [s]he complies with the terms of the order depends upon [her] present ability to comply with the order at the time it is enforced." Howard , 913 So.2d at 1039 (¶ 21). "Regardless of whether [English] had the financial ability to pay the [$50,000 in January 2016], the court must, upon proper motion, revisit the issue at the time the order is executed." Id. Accordingly, English is entitled to "file a motion with the chancery court attempting to prove, with particularity, [her] present inability to pay." Id. at 1040 (¶ 21).
¶ 14. After English filed her notice of appeal, she tried to schedule a hearing on her inability-to-pay claim as a defense to incarceration in the context of an emergency motion to stay her incarceration. On April 14, 2016, the chancery court denied English's request without a hearing on the basis that it lacked jurisdiction to modify the judgment that, at that time, was pending in this appeal. English then filed an emergency petition with the supreme court to vacate the arrest warrant and stay her incarceration. In re: English , 2016-M-00418. A three-justice panel dismissed English's petition and agreed that the chancellor lacked jurisdiction to modify its contempt judgment while this appeal was pending. The panel's order seemed to suggest that the chancellor did have jurisdiction to consider English's emergency request for a stay. However, English never renewed her motion or a request for a hearing in the chancery court. Nor did she appeal the chancery court's April 14, 2016 order. Therefore, the denial of her request for a hearing is not properly before us.
CONCLUSION
¶ 15. There was substantial credible evidence to support the chancellor's decision that English failed to rebut Davenport's prima facie case of contempt. Consequently, we affirm the chancellor's "final judgment on petition for contempt."
¶ 16. AFFIRMED.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND WESTBROOKS, JJ., CONCUR. TINDELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION.
¶ 17. I concur with the majority's holding that sufficient evidence supported the chancellor's finding of contempt against English. I also concur with the majority's *364 conclusion that English is entitled to file a motion to attempt to prove with particularity her present inability to pay to avoid incarceration. However, I believe that English should not be imprisoned for failing to pay this type of alimony. Since the Mississippi Supreme Court has never fully addressed the constitutional applicability of incarceration for default on property-division payments, this Court should do so now. Therefore, I will address English's constitutional argument.
¶ 18. Article 3, Section 30 of the Mississippi Constitution states "[t]here shall be no imprisonment for debt." These words are clear and unambiguous.
¶ 19. Mississippi caselaw has long upheld imprisonment for the nonpayment of alimony or child support because such obligations constitute a duty outside the Constitution's meaning of a debt. Felder v. Felder's Estate , 195 Miss. 326, 326, 13 So.2d 823, 827 (1943) ; Fanchier v. Gammill , 155 Miss. 316, 316, 124 So. 365, 366 (1929) ; Ex parte Bridgforth , 77 Miss. 418, 418, 27 So. 622, 622-23 (1900). In Felder , our supreme court elaborated that "alimony is not sued on as a debt ... in the ordinary sense but rather a legal means of enforcing the husband's obligation to his wife and children ...." Felder , 195 Miss. at 326, 13 So.2d at 828. The Felder court further provided that alimony "is imposed upon [the payor] by virtue of the marriage relation, for reasons of public policy, and not as a debt resulting from some business transaction or other contractual obligation." Id.
¶ 20. The precedent set by this line of cases predates the application of equitable distribution by Mississippi courts. "Alimony and equitable distribution are distinct concepts ...." Ferguson v. Ferguson , 639 So.2d 921, 929 (Miss. 1994). The doctrine of equitable distribution refers to the courts' authority to award property legally owned by one spouse to the other spouse. Id. at 927. Under the equitable-distribution system, marriage is viewed as a partnership with both spouses contributing to the marital estate in the manner they have chosen. Id.
¶ 21. With regard to the present parties, our supreme court previously recognized that the chancellor ordered English to pay Davenport lump-sum alimony, which mostly reflected Davenport's interests in the parties' businesses.[7] Davenport v. Davenport , 156 So.3d 231, 238 (¶ 35) (Miss. 2014). At the time, Davenport had a monthly gross income of $3,107.51 and was ordered to pay $683.66 in monthly child support. Id. at 235 (¶ 11). Thus, the sums English failed to pay were not support; instead, the sums were meant to divest Davenport of the parties' businesses and assets. Under such circumstances, the payments English owed were more akin to a business debt than support for children or a destitute spouse. As such, there is simply no public-policy or moral-obligation argument that applies to exempt English from the rights she is guaranteed under Article 3, Section 30 of the Mississippi Constitution.
¶ 22. Other states have long recognized property-division obligations as a debt that falls within the meaning of their constitutional prohibitions against imprisonment and, thus, unenforceable through contempt proceedings. See Christopher H. Hall, Annotation, Divorce: Propriety of Using Contempt Proceeding to Enforce Property Settlement Award or Order , 72 A.L.R. 4th 298 § 7 (1989) (providing caselaw from multiple states that have found contempt proceedings *365 may not be used to enforce property-settlement payments). For instance, in one Florida bankruptcy case, the court explained that "[t]he obligation to make periodic payments pursuant to a property[-]settlement agreement cannot be enforced by contempt proceedings[ ] because in such cases the parties stand as debtor and creditor." In re Wilbur , 304 B.R. 521, 526-27 (Bankr. M.D. Fla. 2003). In a Ninth Circuit case that applied Alaska caselaw, the court held property-settlement payments cannot be enforced by contempt proceedings because "[t]he provisions of a property[-]settlement agreement are governed by the law of contracts." Goggans v. Osborn , 237 F.2d 186, 189 (9th Cir. 1956). Similarly, the California Supreme Court recognized in Bradley v. Superior Court of San Francisco , 48 Cal.2d 509, 310 P.2d 634, 634 (1957), that, where property-settlement payments represent a contractual obligation between parties for an adjustment of property interests rather than "a severable provision for alimony," default cannot be enforced through contempt proceedings.
¶ 23. Because I agree with those states that view property-division payments as an obligation within the constitutional prohibitions against imprisonment for debt, I concur with the majority that English may be held in contempt for her failure to pay Davenport, but not that she may be incarcerated. The constitutional prohibition also applies equally to awards of other fees and costs not associated with the support of a spouse or children. For these reasons, I specially concur with the majority and write this separate opinion.

This figure derived in large part from Davenport's interest in a business that the couple formed after they married. During the marriage, English and Davenport both received distributions from the business "to cover any expenses [that] were not covered by their salaries." Davenport , 156 So.3d at 234 (¶ 6). When the couple separated in 2007, the business had a net asset value of $2,520,000. Id. at 237 (¶ 18). After the separation, Davenport "no longer received distributions from" the business. Id. at 234 (¶ 6). However, English continued to receive distributions that "were later reclassified as 'loans to shareholder[.]' " Id. The distributions were reclassified as loans at the advice of an accountant so English could "avoid having to issue pro rata distributions" to Davenport. Id. at 236 (¶ 14). By the time of the divorce, the business had "loaned" English nearly $3,000,000. More than two-thirds of that figure "was expended on new business ventures, most of which were unsuccessful, leaving $723,560 being used for [English's] personal expenses." Id. at (¶ 15). By 2011, the net asset value of the business was nearly $2,700,000 - nearly all of which was in the form of "loans" that, according to testimony related to the divorce proceedings, English may never repay. Id. at 237 (¶ 18). The supreme court upheld the chancellor's valuation and equitable distribution of the business based on that calculation. Id.

English was also held in contempt because she had not reimbursed Davenport for a tax liability that he had incurred after the business falsely reported that he had been paid taxable income. Additionally, English had not given Davenport personal property that he was awarded incident to the divorce.

When English filed her notice of appeal, there was an outstanding warrant for her arrest because she failed to make the March 1, 2016 payment.

On January 30, 2018, one of English's attorneys filed a suggestion of bankruptcy noting that, six days earlier and through different counsel, English had filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Western District of Louisiana. On January 31, 2018, counsel for both parties convened for the oral argument that had been scheduled since late November 2017. As a preliminary matter, this Court asked counsel for English whether the automatic stay set forth in 11 U.S.C. § 362 (2012) applies to this appeal. The oral argument was ultimately continued and the appeal was held in abeyance until the applicability of the stay had been resolved. On English's motion, the bankruptcy court entered an order stating that "the automatic stay has no application" to the appeal that has been assigned to this Court.

English and Davenport have three children together. English was awarded physical custody of them. They were teenagers as of the contempt proceedings that led to this appeal. Although English employed someone who stayed with the three children after school, English testified that she and the children primarily ate at restaurants because she did not have time to buy groceries or cook. English also has three adult sons from a previous relationship. Based on the number of expenditures in Starkville, Mississippi, on the same day that there were expenditures in other parts of Mississippi and Louisiana, it was reasonable for the chancellor to conclude that at least one of English's adult sons had access to her checking account. There was also evidence that English spent thousands of dollars on a number of trips for her and the children.

The separate opinion makes a reasonable argument that the lump-sum alimony at issue in this case is not the type of alimony that our supreme court held "is not a debt." Felder v. Felder's Estate , 195 Miss. 326, 328, 13 So.2d 823, 827 (1943) (holding that "a constitutional prohibition against imprisonment for debt does not prevent a commitment to prison for nonpayment of alimony"). The lump-sum alimony in this case "served as a means to equitably divide the marital property." Davenport , 156 So.3d at 241 (¶ 35). It was not awarded based on a "duty" of spousal or child "support." Felder , 195 Miss. at 328, 13 So.2d at 827. Arguably, this sort of alimony is a "debt," and our Constitution makes clear that "[t]here shall be no imprisonment for debt." Miss. Const. art. 3, § 30 ; see Deborah H. Bell, Mississippi Family Law § 14.06[6][b], at 497-98 (2d ed. 2011) (stating that "imprisonment for nonpayment of alimony and child support does not contravene the constitutional prohibition," but "an argument can be made that property division is distinguishable from support payments"). However, English did not raise this issue in the chancery court, and on appeal she cites the constitutional provision only in passing. English has never made the constitutional argument now made by the separate opinion. "[The supreme c]ourt has ... consistently held that errors raised for the first time on appeal will not be considered, especially where constitutional questions are concerned." Ellis v. Ellis , 651 So.2d 1068, 1073 (Miss. 1995). English may raise this issue in any future proceedings in the chancery court, but the issue is not before this Court in this appeal.

The chancellor ordered English to pay $1,515,914.33 in lump-sum alimony in 180 monthly installments of $8,421.75. Davenport , 156 So.3d at 235 (¶ 11). Of the total lump-sum alimony awarded, $1,179,380.89 was attributable to business assets. Id.